**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| **NEW YORK STATE RESTAURANT** | : | |
| **ASSOCIATION,** | : | |
|  | : | |
| **Plaintiff,** | : | |
|  | : | |
| -against- | : | **No. 08 CIV 1000 (RJH)** |
|  | : | |
| **NEW YORK CITY BOARD OF HEALTH,** | : | |
| **NEW  YORK CITY DEPARTMENT OF HEALTH** | : | |
| **AND MENTAL HYGIENE, and Thomas R. Frieden,** | : | |
| **In His Official Capacity as Commissioner** | : | |
| **Of the New York State Department of Health** | : | |
| **And Mental Hygiene,** | : | |
|  | : | |
| **Defendants.** | : | |

_____ :

### MOTION OF THE RUDD CENTER FOR LEAVE
### TO FILE BRIEF AS AMICUS CURIA

Brian L. Bromberg moves for leave to file the accompanying brief on behalf of Jennifer L. Pomeranz and Kelly D. Brownell of the Rudd Center for Food Policy and Obesity at Yale University ("Rudd Center"), as amicus curiae, urging the court to deny plaintiff's motion for declaratory relief and a preliminary injunction.

The Rudd Center is a non-profit organization whose mission is to improve the world's diet, prevent obesity, and reduce weight stigma by establishing connections between science and public policy, developing targeted research, encouraging frank dialogue among key constituents, and expressing a dedicated commitment to real change.  The Rudd Center assesses, critiques, and strives to improve practices and policies related to nutrition and obesity so as to inform and empower the public, to promote objective, science-based approaches to policy, and to maximize

1

the impact on public health.  New York City's adoption of revised Health Code §81.50 furthers the Rudd Center's goals.

New York City adopted Amendment §81.50 Calorie Labeling to Article 81 of the New York City Health Code on December 5, 2006.  The New York State Restaurant Association ("Plaintiff") sued New York City to prevent enforcement of the original Health Code § 81.50 in June 2007, alleging that the amendment was preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA") and that it violated its members' First Amendment rights.  This Court found that the "voluntary" aspect of the Health Code section was preempted by the NLEA, and it did not reach the First Amendment arguments.

New York City revised §81.50 to "require" restaurants that are covered food service establishments as defined by §81.50(a)(1) to disclose the calorie content of their menu items directly on the menu or menu board.  *See* Notice of Adoption of A Resolution to Repeal and Reenact §81.50 of the New York City Health Code (January 22, 2008) ("Notice of Adoption"), at 12-13.  The resolution was adopted on January 22, 2008.  Through this regulation, New York mandates that food service establishments post on menu boards and menus the calorie content of the foods and beverages they offer for sale.  *See id*.  The purpose of this regulation is to close the calorie information gap to allow individuals to make more informed choices that can decrease their risk for the negative health effects of overweight and obesity associated with excessive calorie intake.  *Id*. at 5-7.  Based on the best scientific evidence available, public health expert recommendations, and substantial research, the Rudd Center supports and has been supporting menu labeling legislations in cities and states across the country.

The Rudd Center's amicus curia brief focuses on the First Amendment challenges made by plaintiff in its memorandum of law in support of its motion.  Compelled disclosure

requirements, like Health Code §81.50 are an important and effective tool to better inform consumers and prevent them from being confused about the caloric composition of the foods and beverages they purchase and consume.  By giving consumers the tools to allow them to make better informed choices, citizens of New York City will be able to make healthier choices which can in turn help them to prevent or reduce obesity and related diseases.

Amicus seeks leave to file this twenty page brief urging this Court to deny plaintiff's motion for declaratory relief and a preliminary injunction.  Jennifer Pomeranz sought and received consent from both parties to file this amicus brief.  Mark Muschenheim, Assistant Corporation Counsel for the New York City defendants, and Kent Yalowitz of Arnold & Porter LLP, for the plaintiff, consented to this submission.

<div align="center">

**CONCLUSION**

</div>

The motion for leave to file a brief as amicus curiae should be granted.

Dated: February 8, 2008

<div style="margin-left:40%">

Respectfully submitted,

Attorney for Amicus Curiae:

/s/ Brian L. Bromberg
Brian L. Bromberg (BB: 6264)
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Amicus Curiae:

Jennifer L. Pomeranz (not admitted in S.D.N.Y)
Kelly D. Brownell (not an attorney)
The Rudd Center For Food Policy & Obesity
Yale University
309 Edwards Street
New Haven, CT 06520
(203) 432-6700

</div>

**CERTIFICATE OF SERVICE**

I, Brian L. Bromberg, an attorney, hereby certify that on February 8, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Kent A. Yalowitz: kent_yalowitz@aporter.com

Nancy Gordon Milburn: milburn@aporter.com

Peter L. Zimroth: peter_zimroth@aporter.com

Mark W. Muschenheim: mmuschen@law.nyc.gov

Dated:  New York, New York
        February 8, 2008


                                    /s/ Brian L. Bromberg
                                    Brian L. Bromberg

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| NEW YORK STATE RESTAURANT ASSOCIATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | No. 08 CIV 1000 (RJH) |
| | : | |
| NEW YORK CITY BOARD OF HEALTH, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, and Thomas R. Frieden, In His Official Capacity as Commissioner Of the New York State Department of Health And Mental Hygiene, | : | |
| | : | |
| Defendants. | : | |

_____

**BRIEF OF JENNIFER L. POMERANZ AND KELLY D. BROWNELL
OF THE RUDD CENTER FOR FOOD POLICY AND OBESITY AT YALE
UNIVERSITY AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS**

Jennifer L. Pomeranz and Kelly D. Brownell of the Rudd Center for Food Policy and Obesity at Yale University ("Rudd Center") submit this brief in support of Defendants New York City Board of Health, New York City Department of Health and Mental Hygiene, and Thomas R. Frieden ("New York City") and against Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction.

## I. STATEMENT OF INTEREST

Jennifer L. Pomeranz, J.D., M.P.H. is the Director of Legal Initiatives at the Rudd Center and Kelly D. Brownell, Ph.D. is the Director of the Rudd Center. The Rudd Center's mission is to improve the world's diet, prevent obesity, and reduce weight stigma by establishing connections between sound science and public policy, developing targeted research and

expressing a dedicated commitment to real change.  The Rudd Center strives to improve practices and policies related to nutrition and obesity so as to inform and empower the public, to promote objective, science-based approaches to policy, and to maximize the impact on public health.  New York City's adoption of revised Health Code §81.50 directly furthers the Rudd Center's goals.  We write separately on the First Amendment issues.

The obesity epidemic is a public health crisis in the United States.  New York City is addressing the epidemic by requiring food service establishments to post the calorie content of food and beverages they offer on menus and menu boards.  Based on the best scientific evidence available and the recommendations of public health experts, the Rudd Center supports New York City's regulation as it has supported menu labeling legislations in cities and states across the country.  The United States Surgeon General, the Institute of Medicine, the United States Food and Drug Administration ("FDA"), and the American Medical Association ("AMA") have all advocated for increased nutrition information for food and beverages offered for purchase in food service establishments ("restaurants"), and especially at those that sell what is commonly referred to as "fast food."

## II. __BACKGROUND__

In New York City, more than half of adults are overweight or obese (54%).  *See* Notice of Adoption of A Resolution to Repeal and Reenact §81.50 of the New York City Health Code (January 22, 2008) ("Notice of Adoption"), at 3.  In 2005, 70% of all deaths in New York City were due to diseases highly correlated with obesity: heart disease, diabetes, stroke and cancer.  *See id*.  In an effort to address these public health issues, New York City originally adopted Amendment §81.50 Calorie Labeling to Article 81 of the New York City Health Code on December 5, 2006.  The New York State Restaurant Association ("Plaintiff") sued New York

City to prevent enforcement of the original Health Code § 81.50 in June 2007, alleging that the amendment was preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA") and that it violated its members' First Amendment rights.  This Court found that the "voluntary" aspect of the Health Code section was preempted by the NLEA, and it did not reach the First Amendment arguments.

New York City followed the opinion of this Court and revised §81.50 to "require" restaurants that are covered food service establishments as defined by §81.50(a)(1) to disclose the calorie content of their menu items directly on the menu or menu board.   *See* Notice of Adoption, at 12-13.  The resolution was adopted on January 22, 2008.

The majority of restaurants subject to §81.50 serve what is commonly referred to as "fast food."  Fast food consumption is associated with a higher intake of calories, saturated fat, carbohydrates and added sugars. [1]  Consuming fast-food is positively associated with weight gain, insulin resistance and increased risk for obesity and type two diabetes.[2],[3],[4]  One study found that most consumers of fast food visited these food service establishments two times a week.[5]  When each meal eaten at these establishments often contains "enough calories to satisfy a person's caloric requirement for an entire day,"[6] this translates into a good deal of excess calories and thereby excess body weight.  Therefore, by reaching these food service establishments, New York City is directly addressing a major cause of overweight and obesity.

---

[1] Bowman SA, Vinyard BT. Fast food consumption of U.S. adults: impact on energy and nutrient intakes and overweight status. *J Am College Nutr*. 2004;23(2): 163-168.
[2] Bowman SA, Gortmaker SL, Ebbeling CB, Pereira MA, Ludwig DS. Effects of fast-food consumption on energy intake and diet quality among children in a national household survey. *Pediatrics*. 2004;113(1):112-118.
[3] French SA, Harnack L, Jeffery RW. Fast food restaurant use among women in the Pound of Prevention study: dietary, behavioral and demographic correlates. *Int J Obes Relat Metab Disord*. 2000;24(10):1353-9.
[4] Pereia MA, Kartashov AI, Ebbeling CB, Van Horn L, Slattery ML, Jacobs DR Jr., Ludwig DS. Fast-food habits, weight gain, and insulin resistance (the CARDIA study): 15-year prospective analysis. *Lancet*. 2005;365:36-42.
[5] Pereia MA, Kartashov AI, Ebbeling CB, Van Horn L, Slattery ML, Jacobs DR Jr., Ludwig DS. Fast-food habits, weight gain, and insulin resistance (the CARDIA study): 15-year prospective analysis. *Lancet*. 2005;365:36-42.
[6] National Institute of Health News. December 30, 2004. Accessible at http://www.nih.gov/news/pr/dec2004/nhlbi-30.htm.

Health Code §81.50 advances New York City's interest in reducing obesity by promoting informed consumer decision-making and preventing consumer confusion. Sound scientific evidence strongly supports this rationale. First, studies show that consumers routinely consult food labels[7] and that as a result make positive changes to their food purchasing habits.[8] Second, there is consensus within the public health community that consumers,[9] and even professional nutritionists, are unable to correctly estimate the calorie content of foods and beverages, particularly at restaurants.[10]

Large portion sizes at restaurants make it especially difficult for consumers to know what is in their foods. Because there is a strong tendency for people to eat what they are served and because the size of these "servings" had increased dramatically, it is to be expected that consumers cannot accurately assess the calorie content of their foods and beverages.

Health Code §81.50 provides this necessary information to consumers in a manner that public health professionals regard as most effective in promoting informed consumer decision-making and preventing consumer confusion: at the point of purchase. Similar disclosure requirements are common in federal and state regulatory programs designed to promote consumer information and prevent potential consumer confusion. In doing so, these requirements establish efficiency and transparency in the commercial marketplace.

New York City's disclosure requirement implements sound public policy reflecting information the public health community has known for years. The scientific consensus on this

---

[7] US Department of Health and Human Services (US DHHS), Centers for Disease Control and Prevention, National Center for Health Statistics. *Healthy People 2000 Final Review*. 2001.

[8] Levy AS. Derby BM. The Impact of NLEA on Consumers: Recent Findings from FDA's Food Label and Nutrition Tracking System. Washington DC: Center for Food Safety and Applied Nutrition. Food and Drug Administration. 1996.

[9] Burton S, Creyer EH, Kees J, Huggins K. Attacking the obesity epidemic: the potential health benefits of providing nutrition information in restaurants. Am J Public Health. 2006; 96:1669-1675.

[10] Backstrand J, Wootan MG, Young LR, Hurley J. *Fat Chance*, Washington, DC: Center for Science in the Public Interest, 1997.

issue has led one county to pass, and at least 6 cities/counties and 15 states to introduce legislation similar to Health Code §81.50.

Plaintiff again argues that Health Code §81.50 compels and burdens speech in violation of the First Amendment of the United States Constitution.  *See* Memorandum of Law in Support of Plaintiff's Motion for Declaratory Relief and a Preliminary Injunction ("Plaintiff's Memo"). If Plaintiff's argument is accepted, innumerable federal and state regulations requiring factual disclosure by commercial actors will be put into question, jeopardizing the entire consumer protection regulatory structure in the United States, not to mention the government's ability to address the obesity epidemic through regulations promoting informed consumer choice and personal responsibility.  The New York City Department of Health and Mental Hygiene's ability to regulate for the public health would be derailed.

## III.  ARGUMENT

### A.  Commercial Disclosure Requirements Are Routine

Plaintiff's First Amendment arguments are extreme.  Commercial disclosure regulations are a routinely applied to transactions in the current marketplace.  If promoting the circulation of accurate factual commercial information in order to inform consumers and prevent confusion were constitutionally questionable, huge swaths of ordinary consumer protection legislation would be rendered constitutionally suspect.  Purveyors of food items must presently make available to consumers a wide range of information, standardized for easy comparison, about everything from the ingredients contained in the product, 21 U.S.C. §343(i), to the net weight of the contents, 21 U.S.C. §343(e), to the unit-price of the product, N.Y. Agric. & Mkts. Law 214-h (McKinney 2007).  Beverage containers must state the percentage of alcohol by volume.  *See* 27 U.S.C. § 205(e)(2).  Similarly, laws enforced by the Federal Trade Commission require that most

textile and wool products have labels listing: fiber content, country of origin, and the identity of the manufacturer or another business responsible for marketing or handling the item. *See* the Textile Fiber Products Identification Act, 15 U.S.C. § 70, et seq., and the Wool Products Labeling Act of 1939 (Wool Act), 15 U.S.C. § 68, et seq.

Plaintiff's argument is so excessive that it would undermine the very FDA disclosure requirements (21 U.S.C. §343 et seq.) to which Plaintiff otherwise appeals in its argument for preemption.

The Second Circuit has specifically rejected Plaintiff's argument that compelled disclosure of accurate commercial information in the marketplace is constitutionally questionable:

> Innumerable federal and state regulatory programs require the disclosure of product and other commercial information. See, e.g., 2 U.S.C. § 434 (reporting of federal election campaign contributions); 15 U.S.C. § 78l (securities disclosures); 15 U.S.C. § 1333 (tobacco labeling); 21 U.S.C. § 343(q)(1) (nutritional labeling); 33 U.S.C. § 1318 (reporting of pollutant concentrations in discharges to water); 42 U.S.C. § 11023 (reporting of releases of toxic substances); 21 C.F.R. § 202.1 (disclosures in prescription drug advertisements); 29 C.F.R. § 1910.1200 (posting notification of workplace hazards); Cal. Health & Safety Code § 25249.6 ("Proposition 65"; warning of potential exposure to certain hazardous substances); N.Y. Envtl. Conserv. Law § 33-0707 (disclosure of pesticide formulas).

*National Electrical Manufacturers Association v. Sorrell et al.*, 272 F.3d 104, 116 (2d Cir. 2001); *see also*, Robert Post, *Transparent and Efficient Markets: Compelled Commercial Speech and Coerced Commercial Association in United Foods, Zauderer, and Abood*, 40 Val. U. L. Rev. 555, 584-585 (2006) ("commercial speech is routinely and pervasively compelled … to reduce information costs and thereby to establish a more educated and efficient marketplace.").

The Supreme Court has explained that the First Amendment protection of "[c]ommercial expression not only serves the economic interest of the speaker, but also assists consumers and

furthers the societal interest in the fullest possible dissemination of information." *Central*

*Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561-562

(1980) (Consumers will "perceive their own best interests if only they are well enough

informed."). The Second Circuit agreed that a commercial disclosure requirement furthers "the

First Amendment goal of the discovery of truth and contributes to the efficiency of the

'marketplace of ideas.'" *Sorrell*, 272 F.3d at 114. Consumer disclosure requirements like Health

Code §81.50 serve this goal by increasing the accurate factual information available to

consumers. To strike down Health Code §81.50 would render constitutionally suspect the entire

system of consumer protection in the United States.

**B. The First Amendment Standard for Commercial Disclosure Requirements is the Reasonable Relationship Test**

Plaintiff's extreme argument misunderstands the basic constitutional law of commercial

speech, and it is especially misleading with regard to the First Amendment standards applicable

to commercial disclosure requirements. The First Amendment guarantees protection to both

commercial and noncommercial speech. *See Virginia Pharmacy Board v. Virginia Citizens*

*Consumer Council*, 425 U.S. 748 (1976). However, the Constitution "accords a lesser protection

to commercial speech than to other constitutionally guaranteed expression." *Central Hudson*,

447 U.S. 557, 563; *see also, National Electrical Manufacturers Association v. Sorrell et al.*, 272

F.3d 104, 113 (2d Cir. 2001) ("Commercial speech is subject to 'less stringent constitutional

requirements' than other forms of speech."). When a law restricts commercial speech, it is

analyzed under the intermediate four-part test set forth in *Central Hudson Gas & Electric Corp.*

*v. Public Service Commission of New York. See Central Hudson*, 447 U.S. at 566. However,

when laws or regulations "impose no restraint on the freedom of any [commercial speaker] to

communicate any message to any audience," then the case falls out of the purview of the *Central*

*Hudson* test. *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457, 469, n. 12 (1997); see also *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 650 (1985).  Therefore, "regulations that compel 'purely factual and uncontroversial' commercial speech are subject to more lenient review than regulations that restrict accurate commercial speech." *Sorrell*, 272 F.3d at 113 (*quoting Zauderer*, 471 U.S. at 651).  Thus, commercial disclosure requirements are to be analyzed under the reasonable relationship test.  *Zauderer*, 471 U.S. at 651; *Sorrell*, 272 F.3d at 115 ("The [First] Amendment is satisfied, therefore, by a rationale connection between the purpose of a commercial disclosure requirement and the means employed to realize that purpose.").

The United States Supreme Court explicitly addressed this question in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 651 (1985)).  *Zauderer* holds that in the context of commercial speech compelled disclosure requirements of purely factual information are constitutional if they bear a reasonable relationship to an appropriate state interest.  471 U.S. at 651.  Indeed, *Zauderer* explicitly states that a commercial speaker's "constitutionally protected interest in *not* providing any particular factual information … is minimal."  *Zauderer*, 471 U.S. 651 (emphasis in the original).

In *Zauderer*, the Court considered a state requirement that attorney advertisements for contingent-fee representation must disclose "whether percentages are computed before or after deduction of court costs and expenses."  471 U.S. at 633.  The Ohio Office of Disciplinary Counsel filed a complaint against an attorney for, among other things, not complying with this disclosure requirement.  Defendant argued that the disclosure requirement should be analyzed under an intermediate First Amendment standard, but the Court disagreed:

> The State has attempted only to prescribe what shall be orthodox in commercial advertising, and its prescription has taken the form of a requirement that appellant

> include in his advertising purely factual and uncontroversial information about the terms under which his services will be available. Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, see *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council, Inc*., 425 U.S. 748 (1976), appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal.

*Id*. at 651 (emphasis in original). The Court explained that such compelled disclosure requirements are constitutional if they are reasonably related to the state's interest. *Id*. The state's interest in the *Zauderer* case was preventing the deception of consumers from misleading attorney advertisements. *Id*. The Court found that this interest was reasonably related to its requirement that attorneys include factual information associated with contingent-fee representation in their advertisements. *Id*.

The Second Circuit case of *Sorrell* applied the reasonable relationship test set forth in *Zauderer* to a disclosure requirement analogous to the one at issue here. In *Sorrell*, the legislature of Vermont enacted a statute requiring manufacturers of some mercury-containing products to label their products and packaging to inform consumers of their mercury content. Vermont's goal was to reduce mercury contamination. 272 F.3d at 107. The National Electrical Manufacturers Association, on behalf of its lamp-manufacturer members, sued the state defendants to enjoin the enforcement of the regulation on the theory that it violated their First Amendment rights by compelling commercial speech. The Second Circuit found that the "compelled disclosure" of "purely factual and uncontroversial commercial speech" is "governed by the reasonable-relationship rule in Zauderer." *Id*. at 113, 116. The Court explained the justification for reasonable relationship test:

> Commercial disclosure requirements are treated differently from restrictions on commercial speech because mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient

> exchange of information or protecting individual liberty interests. Such disclosure furthers, rather than hinders, the First Amendment goal of the discovery of truth and contributes to the efficiency of the 'marketplace of ideas.' … In such a case, then, less exacting scrutiny is required than where truthful, nonmisleading commercial speech is restricted.

*Sorrell*, 272 F.3d at 114-115 (*citing*, 44 *Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501, 134 L. Ed. 2d 711, 116 S. Ct. 1495 (1996); *Zauderer*, 471 U.S. at 650-51; Robert Post, *The Constitutional Status of Commercial Speech*, 48 U.C.L.A. L. Rev. 1, 28 (2000)) (footnote omitted). Applying the reasonable relationship test, the Second Circuit found that the disclosure requirement was reasonably related to the state's interest in informing consumers of products' contents so as to reduce mercury pollution. It specifically noted that to hold otherwise "would expose the[] long-established [regulatory] programs, [discussed *infra* at IIIA,] to searching scrutiny by unelected courts. Such a result is neither wise nor constitutionally required." *Id*. 272 F.3d at 116.

As Plaintiff pointed out, the Second Circuit decided *Sorrell* over four months after the Supreme Court case of *United States Department of Agriculture v. United Foods*, 533 U.S. 405 (2001). *See* Plaintiff's Memo at 43. With *United Foods* fresh in the Judges minds, they unanimously applied the *Zauderer* standard to uphold the disclosure requirement at issue in that case. They did not rely on *United Foods* because it is inapplicable to disclosure requirements (as discussed further below).

Plaintiff alleges that *Zauderer*, and thus the reasonable relationship test, only applies when the State's interest is in preventing confusion of consumers. See Plaintiff's Memo at 41-43. Even assuming this was correct, Health Code §81.50 was passed to prevent consumer confusion over the calorie content of pre-prepared food and beverages, *see* Notice of Adoption at 5-7, so it would be constitutional under Plaintiff's reading of the case. Moreover, the cases

Plaintiff cited for the proposition that the holding in *Zauderer* is not a fortuitous byproduct of the facts before the Court, are cases about misleading commercial *advertisements*.  See Plaintiff's Memo at 41-43 (citing *Zauderer*, 471 U.S. 626, 651 ("But we hold that an *advertiser's* rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers.") (emphasis added); *In re: R.M.J.* 455 U.S. 191, 203 (1982). ("Although the potential for deception and confusion is particularly strong in the context of *advertising* professional services, restrictions upon such *advertising* may be no broader than reasonably necessary to prevent the deception.") (emphasis added).  Therefore, it is not surprising that since the Court was addressing similar factual scenarios, it used similar legal analysis to determine the constitutionality of the laws in question.

However, Plaintiff's reading of the case law has been explicitly rejected by the Second Circuit and other Circuit Courts.  Plaintiff's argument directly contravenes governing precedent in the Second Circuit. [11]  In *Sorrell* the Court concluded that the reasonable relationship test should apply to requirements that mandate the disclosure of factual commercial information in order to promote informed consumer decision-making.  Plaintiff's argument was expressly rejected by the Second Circuit in *Sorrell*.  *See Sorrell*, 272 F.3d at 115-116.  The Second Circuit stated:

> To be sure, the compelled disclosure at issue here was not intended to prevent 'consumer confusion or deception' per se, Zauderer, 471 U.S. at 651 (internal quotation marks omitted), but rather to better inform consumers about the products they purchase. … Accordingly, we cannot say that the statute's goal is inconsistent with the policies underlying First Amendment protection of commercial speech, described above, and the reasons supporting the distinction between compelled and restricted commercial speech. We therefore find that it is governed by the reasonable-relationship rule in Zauderer.

---

[11] This Second Circuit case is binding precedent on this Court.  *See Wells Fargo Bank Northwest, N.A. v. TACA Intern. Airlines, S.A.*, 314 F. Supp. 2d 195, 198 (S.D.N.Y. 2003) ("It is not for this Court to overrule binding Second Circuit precedent.").

*Sorrell*, 272 F.3d at 115.

In addition to the Second Circuit, other Circuits have expressly found that the reasonable relationship test of *Zauderer* applied to commercial disclosure requirements like Health Code §81.50.  In *Pharmaceutical Care Management Association v. Rowe*, the First Circuit considered a trade association's challenge to a state statute that would require its members to disclose certain information in order to enter contracts with covered entities.  429 F.3d 294, 299 (1st Cir. 2005).  Responding to a similar argument as Plaintiff in the above captioned case, the court explained:

> [Plaintiff's] *First Amendment* claim is completely without merit. So-called 'compelled speech' may under modern Supreme Court jurisprudence raise a serious *First Amendment* concern where it effects a forced association between the speaker and a particular viewpoint. *See, e.g.*, *Wooley v. Maynard*; *Miami Herald Publ'g Co. v. Tornillo*.
>
> What is at stake here, by contrast, is simply routine disclosure of economically significant information designed to forward ordinary regulatory purposes…. There are literally thousands of similar regulations on the books—such as product labeling laws, environmental spill reporting, accident reports by common carriers, SEC reporting as to corporate losses and (most obviously) the requirement to file tax returns to government units who use the information to the obvious disadvantage of the taxpayer.
>
> The idea that these thousands of routine regulations require an extensive *First Amendment* analysis is mistaken.

429 F.3d 294, 316 (1st Cir. 2005) (concur Boudin) (the court noted that the joint concurring opinion of Chief Justice Boudin and Judge Dyk represented the opinion of the court with respect to the First Amendment issues) (internal citations omitted).

Similarly, in *Environmental Defense Center v. EPA*, the Ninth Circuit responded to challenges to certain sections of the Clean Water Act dealing with pollution from stormwater runoff.  344 F.3d 832 (9th Cir. 2003).  One of the regulations compel municipalities ("MS4s") to "distribute educational materials to the community" about the impacts of stormwater discharges and to "inform public employees, businesses, and the general public of hazards associated with

illegal discharges and improper disposal of waste." 344 F.3d 832, 848 (9th Cir. 2003). The court went on to compare the EPA regulation compelling that MS4s inform and educate the public to the mercury disclosure requirement in the case of *Sorrell*: "the Second Circuit held that mandated disclosure of accurate, factual, commercial information does not offend the core *First Amendment* values of promoting efficient exchange of information or protecting individual liberty interests." 344 F.3d 832, 851 (9th Cir. 2003) (internal citation and punctuation omitted). Agreeing with the Second Circuit and the "the policy considerations underlying the commercial speech treatment of labeling requirements," the court upheld the disclosure requirements. *Id.*

Like the commercial disclosure requirements upheld in *Zauderer*, *Sorrell*, *Rowe*, and *Environmental Defense Center*, New York City Health Code §81.50 requires the disclosure of accurate commercial information to promote informed consumer decision-making. Section 81.50 requires that covered food service establishments disclose the "total number of calories" for each menu item on the menu boards and menus. Notice of Adoption at 12-13. The calorie content of food and beverage items is the type of uncontroversial factual information that was at issue in the above discussed cases.

### C. New York City Health Code §81.50 Meets the Reasonable Relationship Test

Mandated disclosure of the calorie content of menu items is reasonably related to the City's objective of reducing the rapidly growing epidemic of obesity and diseases associated therewith. *See* Notice of Adoption at 3, 10-11. The revised §81.50 is geared towards rectifying the calorie information gap which is one important step to promote informed consumer decision-making and prevent further consumer confusion over the calorie content of pre-prepared foods and beverages. *See* Notice of Adoption at 5-7.

Like the disclosure requirement in *Sorrell,* Health Code §81.50 mandates disclosure in order to "better inform consumers about the products they purchase."  *Sorrell,* 272 F.3d at 115. There is scientific evidence that labels on packaged food are associated with healthier eating.[12] New York City reasonably believes that mandating calorie information at the point of purchase of restaurant menu items will similarly encourage healthier eating.  At a minimum, labeling menu items will create conditions that make it possible for consumers to select healthy options.

The implementation of Health Code §81.50 is also necessary to prevent "consumer confusion." *Zauderer.*  471 U.S. at 651.  Not only do scientific studies show that average consumers are oblivious to, and incorrectly estimate, the calorie content of food and beverages they purchase,[13] but a survey of professional nutritionists reveals very similar confusion and inaccuracies.[14]  Calorie information at the point of purchase is thus "appropriately" required "to dissipate the possibility of consumer confusion."  *Zauderer*, 471 U.S. at 651.

New York City's strategy to combat obesity by focusing on calories reflects sound judgment.  *See* Notice of Adoption at 8-9.  As the FDA's Working Group on Obesity concluded, "a focus on total calories is the most useful single piece of information in relation to managing weight."  *Counting Calories, Report of the Working Group on Obesity*, FDA, Center for Food Safety and Applied Nutrition (March 12, 2004) ("Counting Calories") at 24.  The AMA agreed that "at a minimum, calories [should be labeled] on menu boards, since they have limited space."  AMA Resolution at 2.

---

[12] *See* AMA House of Delegates, *Nutrition Labeling and Nutritionally Improved Menu Offerings in Fast-Food and Other Chain Restaurants*, Resolution: 419 (A-07) ("AMA Resolution") at 1; *see also*, n.2 and n.3, *infra*.
[13] Burton S, Creyer EH, Kees J, Huggins K. Attacking the obesity epidemic: the potential health benefits of providing nutrition information in restaurants. Am J Public Health. 2006; 96:1669-1675.
[14] *See* Backstrand J, at n.5, *infra*; *see also*, AMA Resolution at 1 ("Consumers, and even nutrition professionals, are not able to accurately estimate the caloric content of restaurant foods, and studies have found that the provision of nutrition information for away-from-home foods can have a positive influence on food- purchase decisions.").

Health Code §81.50 is thus reasonably related to the New York's interest in reducing obesity by promoting informed consumer decision-making and preventing potential consumer confusion. There is virtual unanimity among the nation's medical and public health organizations on the need to combat obesity by requiring the effective communication of factual nutritional information, and especially calorie information, for food consumed away from home. This is why the leading public authorities in the United States have all advocated increased disclosure of nutrition information for food and beverages purchased in restaurants.[15]

### D. The Case of *United Foods* is Inapplicable to New York City Health Code §81.50

Plaintiff characterizes New York City Health Code §81.50 as requiring restaurants to voice "the government's point of view" with which they disagree. Plaintiff's Memo at 30. It alleges that the posting of calories compels restaurants to express the "point of view that calories are the only nutritional criterion that patrons need to consider." Plaintiff's Memo at 30. For this reason, Plaintiff argues, Health Code §81.50 should be analyzed under the principles set forth in *United States Department of Agriculture v. United Foods*, 533 U.S. 405 (2001), in contrast to the standard of *Zauderer*. Plaintiff's Memo at 32-33.

Plaintiff's argument is flatly incorrect. *United Foods* is inapplicable to the present case because Health Code §81.50 does not require restaurants to express a point of view. Health Code §81.50 requires only the disclosure of simple factual information. A calorie is "a unit of measure for energy obtained from food and beverages." IOM, *Preventing childhood obesity*, at

---

[15] See The Surgeon General's *Call to Action to Prevent and Decrease Overweight and Obesity* U.S. Department of Health and Human Services, Public Health Service, Office of the Surgeon General, Rockville MD (2001) (Recommending "increasing the availability of nutrition information for foods eaten and prepared away from home."); The Institute of Medicine, *Preventing childhood obesity health in the balance*, National Academies Press, Washington DC (2005) at 165-166 (Recommending that "[f]ull-service and fast food restaurants should expand healthier food options and provide calorie content and general nutrition information at point of purchase."); The FDA's Working Group on Obesity, *Counting Calories* at 24 ("The pervasiveness of the obesity epidemic means that more nutrition information must be presented to consumers in restaurant settings."); The AMA's Resolution of 2007 at 2 ("Our American Medical Association support federal, state, and local policies to require fast-food and other chain restaurants … to provide consumers with nutrition information on menus and menu boards.").

332.  There is nothing subjective or ideological about disclosing the calorie composition of a food or beverage.  *See also Dutchess/Putnam Restaurant & Tavern Association v. The Putnam Co. Dept. of Health*, 178 F.Supp.2d 396, 406 (S.D.N.Y. 2001) (Finding no support for "the argument that a sign stating that there are health risks to children from secondhand smoke is an 'ideological' message.")

If restaurants have an actual point of view that additional nutritional information is important for consumers to receive at the point of purchase, Health Code §81.50 leaves them free to communicate this viewpoint and to provide whatever additional data they wish to their customers.  *See* Notice of Adoption, at 14.   The ordinance does not prevent restaurants from listing more nutritional information than caloric content or even stating that calories are being required by the Department of Health.  The ordinance simply sets a minimum floor for restaurant disclosure at the point of purchase.

Plaintiff's claim that putting up "more comprehensive information" is "unrealistic" and "all but impossible" is belied by their argument for "alternatives" later in the brief.  *See* Plaintiff's Memo at 32, 38.  The "alternatives" they suggest: "signs directing consumers to comprehensive nutrition information, posters with complete nutrition information, food wrappers with such information, counter-mats…," are exactly the type of action left available to restaurants if they have the desire to disclose additional facts about their products.  This shows that at most, Plaintiff's First Amendment challenge is not about what it is disclosing but where it is disclosing the same factual information.

Moreover, *United Foods* is distinguishable on both the facts and the law.  *United Foods* involved a Congressional act establishing the Mushroom Council and authorizing it "to impose mandatory assessments upon handlers of fresh mushrooms," with most of the money to go

towards "generic advertising to promote mushroom sales." 533 U.S. at 443.  One large handler

of fresh mushrooms challenged these assessments, contending the "forced subsidy for generic

advertising" violated its First Amendment rights.  *Id.* at 444.  The Court agreed that the First

Amendment was implicated because the handler wanted to "convey the message that its brand of

mushrooms [were] superior to those grown by other producers" and it objected "to being charged

for a message … that mushrooms are worth consuming whether or not they are branded."  *Id.* at

445.  The Court found that the "mandated assessments for speech" were the "principal object of

the regulatory scheme," and as such, they violated the handler's First Amendment right not to be

compelled to support speech with which it disagreed.  *Id.* at 445-446.

Unlike the advertising scheme at issue in *United Foods*, Health Code §81.50 is not a

compelled subsidization of speech mandate.  Nor does it require association between or among

restaurants.  Nor does it mandate that restaurants advertise or speak a certain message.  On the

contrary, the objective of the New York City regulation is the disclosure of factual caloric

information of the products restaurants sell.  Calories are "purely factual and uncontroversial"

facts regarding the composition of foods and beverages sold at a particular restaurant. The

placement of this disclosure at the point of purchase does not force restaurants to convey an

ideological message.  *See Sorrell* 272 F.3d at 113.  Plaintiff's interest in not informing its

customers of the calorie content of its products at the point of purchase is minimal, *see Zauderer*

at 651, and only subject to the reasonable relationship test of *Zauderer*.[16]

---

[16]  Plaintiff's invocation of *Wooley v. Maynard*, 430 U.S. 705 (1977), defies all Supreme Court precedent on the
subject of commercial speech.  *See* Plaintiff's Memo at 23.  In *Zauderer*, the Court dismissed the commercial actor's
appeal to *Wooley* by stating that the State "has not attempted to 'prescribe what shall be orthodox in politics,
nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.'"  471
U.S. at 651.  Likewise, New York City is not prescribing this type of noncommercial speech to offend the First
Amendment's stricter test.  As in *Zauderer*, the government "has attempted only to prescribe what shall be orthodox
in commercial [matters], and its prescription has taken the form of a requirement that [restaurants] include … purely
factual and uncontroversial information" at the point of purchase.  *Id.*

Thus, Plaintiff's argument that that Health Code §81.50 requires restaurants to convey information that the owner does not want to convey on the menu, Plaintiff's Memo at 31, is at best an argument of where the information must be displayed. This is not a First Amendment argument under the commercial speech doctrine. Leading public authorities in the United States agree that point of purchase disclosures are more effective in promoting informed consumer decision-making and preventing potential consumer confusion. *See infra* III C; *see also* Notice of Adoption at 6-8. New York's determination that disclosure should occur at the point-of-purchase is therefore reasonable. In *Zauderer* the Court flatly rejected the "contention" that a disclosure requirement "must be struck down if there are other means by which the State's purpose may be served." 471 U.S. at 651 n.14. Thus even if restaurants have devised one mode to communicate its calorie information to the public, New York City is not precluded from prescribing the means it deems best to serve the pressing public health purpose of addressing the epidemic of obesity.

To the extent Plaintiff's position can be read to allege that the Health Code's focus on calories is constitutionally suspect because it is under-inclusive, *see* Plaintiff's Memo at 30, *Zauderer* holds directly to the contrary: "[W]e are unpersuaded by appellant's argument that a disclosure requirement is subject to attack if it is 'under-inclusive' -- that is, if it does not get at all facets of the problem it is designed to ameliorate. As a general matter, governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied." 471 U.S. at 651.

### E. The Test Set Forth in the Case of *Central Hudson* is Inapplicable to New York City Health Code §81.50

Supreme Court precedent on the commercial speech doctrine confirms that the *Central Hudson* test for restriction on commercial speech is not the correct standard to apply to Health

Code §81.50.  *See e.g.*, *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457, 469, n. 12 (1997); see also *Zauderer*, 471 U.S. at 650-651.   The correct standard to apply is the one set forth in *Zauderer* and *Sorrell*.  The Court specifically stated that the standard set forth in *Central Hudson* is not applicable to commercial disclosure regulations.  *See Zauderer*, 471 U.S. at 651.

Plaintiff, however, relies on the case of *International Dairy Foods Association v. Amestoy*, ("IDFA"), which was decided under the *Central Hudson* test.  As such it is likewise irrelevant to the case at hand.  Further, in *Sorrell*, the Second Circuit explained that IDFA's holding was limited to a requirement supported by no state interest beyond "consumer curiosity." *Sorrell*, 272 F.3d 104, 115, n.6.  In the above captioned case, however, Plaintiff has conceded that the government has a substantial interest in passing §81.50.  See Plaintiff's Memo at 34.

## IV.  **CONCLUSION**

For the foregoing reasons, we urge the Court to find for Defendants and dismiss Plaintiff's motion for declaratory relief and a preliminary injunction.

Dated: February 8, 2008

Respectfully submitted,

Attorney for Amicus Curiae:

/s/ Brian L. Bromberg
Brian L. Bromberg (BB: 6264)
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Amicus Curiae:

Jennifer L. Pomeranz, J.D., M.P.H.          Kelly D. Brownell, Ph.D.
Director of Legal Initiatives               Director

Rudd Center For Food Policy & Obesity       Rudd Center For Food Policy & Obesity
Yale University                             Yale University
309 Edwards Street                          309 Edwards Street
New Haven, CT 06520                         New Haven, CT 06520
(203) 432-6700                              (203) 432-6700