UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RESTAURANT
ASSOCIATION,

      **Plaintiff,**

   - against -

NEW YORK CITY BOARD OF HEALTH,
NEW YORK CITY DEPARTMENT OF HEALTH
AND MENTAL HYGIENE, and Thomas R. Frieden,
In His Official Capacity as Commissioner
of the New York City Department of Health
and Mental Hygiene,

      **Defendants.**

No. 2008 Civ. _____

DECLARATION OF
KEVIN BURNETT

---

KEVIN BURNETT hereby declares under penalty of perjury as follows:

  1. I am the Senior Director of Research and Development and Operations for Kahala Corp/Cold Stone Creamery, Inc. ("Cold Stone"). I have been with Cold Stone for three and a half years, having started as Director of Operations. Cold Stone is a member of the New York State Restaurant Association.

  2. Cold Stone's signature product is its super-premium ice cream. We offer 34 different flavors of ice cream. Customers can also choose from over 50 different "mix ins" -- candy, fruit, nuts and other mix ins -- and from 12 different toppings. Cold Stone also offers reduced fat, low calorie ice creams and a no-sugar-added no fat ice cream, as well as seven flavors of sorbet which have no fat.

  3. Cold Stone advocates a balanced and sensible approach to eating treats or "occasional indulgences" like ice cream. Therefore, Cold Stone began publishing comprehensive nutrition information for its menu items on its website three and a half years

ago. Cold Stone provided its customers with a complete list of nutrients for each menu item, including calories, calories from fat, total fat, saturated fat, trans fat, cholesterol, sodium, carbohydrate, dietary fiber, sugar, sugar alcohols, protein, vitamins, calcium and iron, as well as the recommended percentage daily value for each nutrient so that consumers would understand how a particular menu item would fit into their overall meal plan. Cold Stone provided this information for its ice creams and sorbets, as well as for each of its mix ins, toppings and cones in every available serving size. A copy of the nutrition information pages formerly posted on Cold Stone's website is attached as Exhibit A.

4. The New York City Department of Health's adoption of the earlier version of Regulation 81.50 on December 5, 2006 required those restaurants that make nutrition information available to customers to post product calories on their menu boards using the same type and font as the product name and price. Because Cold Stone did not believe it could comply with the posting requirement on menu boards, it determined that it could no longer make nutrition information about its products available to New York consumers.

5. Complying with the current New York City regulation would impose a great hardship on Cold Stone because each of its products is uniquely made to order. Customers may choose one or more flavors of ice cream or sorbet and then add in as many mix ins and toppings as they want. The list of nutrition information posted on our website before it was withdrawn was three and a half pages single spaced with small type. Given the number of product combinations, it would be impossible for Cold Stone to post calorie information for each of its menu items on the menu board because there would not be enough room to do so.

6. As an alternative, the New York City regulation allows Cold Stone to post a "range" of calories for its products. However, customers can create literally thousands of

different combinations of our menu items. The range for each menu item would be absurdly large (*e.g.*, 220-1040 calories) and would be meaningless to consumers. The posted information would also be confusing because customers would have no way of knowing where in the "range" of calories their particular menu selection fell. The regulation's alternative to posting a range for each menu item, which would allow Cold Stone to post calorie content on a food item tag associated with each flavor, topping and mix in, would only further confuse consumers and cause substantial delay as consumers attempted to add up the total calorie content for their desired combination.

7.    Complying with New York City's regulation would also place Cold Stone at a competitive disadvantage as compared to local stores that sell a similar product and that are not subject to the regulation. Some of our customers who visit our stores to buy our product would change their minds and leave when they saw the calorie "range" of the menu item they wanted to buy. It is very likely that many of those customers would go to a competitor who was not required to post the calorie count of its ice cream products. Its products may in fact have more calories than ours, particularly given that we offer menu items that are non fat, no sugar added and lower in calories than are regular ice creams. Or, our competitor's products may have the same number of calories as ours. In either case, the regulation forces Cold Stone to compete on an unlevel playing field based solely on the fact that it is a national chain store.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on January 25, 2008

_____
KEVIN BURNETT