UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RESTAURANT
ASSOCIATION,

           Plaintiff,

    - against -

NEW YORK CITY BOARD OF HEALTH,
NEW YORK CITY DEPARTMENT OF HEALTH
AND MENTAL HYGIENE, and Thomas R. Frieden,
In His Official Capacity as Commissioner
of the New York City Department of Health
and Mental Hygiene,

           Defendants.

No. 2008 Civ. _____

DECLARATION OF
SCOTT RANDOLPH

---

SCOTT RANDOLPH hereby declares under penalty of perjury as follows:

1. I am the Senior Director of Culinary for T.G.I. Friday's. I am responsible for the hands on leadership of T.G.I. Friday's culinary team in the development and implementation of innovative food ideas and concepts to increase company sales, efficiency, market share and profitability, while continuously improving processes and methodology. I have been a chef since 1989 and with T.G.I. Friday's for two years. Prior to T.G.I. Friday's, I worked in the culinary departments for Walt Disney World, LSG Sky Chefs and Sheraton Hotels.

2. T.G.I. Friday's was one of the first casual dining chains to be established in the United States. It opened its first restaurant in New York City in 1965. It offers a wide selection of food and alcoholic and non-alcoholic beverages. In 2003, T.G.I. Friday's was the first national casual dining chain to partner with Atkins Nutritional Approach to offer low carbohydrate menu items. In 2007, T.G.I. Friday's introduced a Right Portion, Right Price menu, which contains 10 entrees that are about 30 per cent smaller in portion than regular entrees

1

and priced about one third less than regular entrees. The menu is designed to assist our customers in meeting their personal health goals.

3. T.G.I. Friday's strongly disagrees with New York City's regulation which would require it to list calorie information for its food and beverage items on its menus. There is a wide variability among cooks and other kitchen employees, ingredients, raw food materials, and consistency of preparation in casual dining restaurants such as T.G.I. Friday's. This wide variability in turn creates variability in the nutritional levels for seemingly identical menu items. Our experience has shown that given the variability in our portions, ingredients and food preparation, it is very difficult for us to consistently be accurate in making statements about the nutritional content of our menu items.

4. Most of the food ingredients that T.G.I. Friday's uses to prepare its meals are not purchased pre-cut, prepackaged or pre-measured. For example, we do not serve processed meats or chicken which tend to be prepackaged and of uniform size and quantity. Rather, we serve chicken wings and sides of ribs, and these items can vary individually in size and fat content because farm animals vary in size and body content.

5. The majority of our food offerings are cut, measured and prepared by hand by individual cooks in our restaurants. Since such menu items are prepared by hand from scratch, portion sizes for appetizers, entrees, side dishes and even sauces can vary widely from plate to plate depending on which cook is preparing the food, his particular cooking practices and how busy he is. Some cooks use formal measuring devices to measure ingredients; others add ingredients by hand (a pinch or a fistful) and others eyeball amounts. Many cooks use a combination of these methods, and their practices may vary depending on the day and how busy they are. A cook on a busy Friday night may use different food preparation and service methods

than he uses when working a quiet midweek day lunch. A cook on a busy night is more likely to eyeball servings of sauce on rice, whereas a cook who has more time will use a measuring spoon. Similarly, a busy cook may put a handful of French fries on a customer's plate while a less busy cook may use a standardized measurement to serve the fries.

6. Because food items are prepared from scratch using raw ingredients, and each plate is prepared to order by one or more individual employee in the kitchen, it is very difficult for T.G.I. Friday's to assure complete consistency in portions and nutrition levels of ingredients. Therefore, accuracy in the calorie count of menu items is not always achievable despite T.G.I. Friday's best efforts to do so. This variability in the nutrition levels of menu items creates a difficult situation for restaurants such as T.G.I. Friday's. If they try to comply with Regulation 81.50, they risk being sued or receiving unfair and unfavorable publicity if someone determines that the stated nutrition levels of their food items are not accurate.

7. This is not a hypothetical problem. A few years ago an employee at T.G.I. Friday's who was preparing containers of an Atkins program food item "to go," added more sauce to the food item than the T.G.I. Friday's recipe specified. A local television station had the item analyzed and found that the carbohydrate level represented by T.G.I. Friday's was not accurate. In that instance an individual employee's well-meaning desire to give his customers some additional sauce in the "to go" container caused the representation on the menu to be inaccurate. We are very concerned that such an incident may occur if T.G.I. Friday's is forced to follow Regulation 81.50.

8. Unlike the proposed federal law that T.G.I. Friday's has supported, the New York City regulation does not provide any safe harbor for restaurants whereby, as long as the restaurant provides a standardized recipe with sufficient detail on the correct preparation and

3

employees are trained in following those specifications, a restaurant will not be subject to legal liability in the event there is variability in the listed nutritional levels of its menu items. Even though our cooks follow specifications on how to prepare dishes, and they and other employees receive training on how to prepare and present our menu items, nonetheless there is inevitably a level of variability in the portions, preparation and presentation of the food, just as there would be in a single unit restaurant or in one's own home kitchen. This variability in turn creates variability in the nutritional levels of seemingly identical food items. In order to remove any potential for inconsistency or variability, T.G.I. Friday's would have to add so many checks and balances that the cost to the consumer of dining out would increase significantly.

9. The provision in the Regulation allowing the calorie level to be expressed as a "range" is impractical and harmful to our business. If T.G.I. Friday's lists a hamburger on its menu with a range of 250-400 calories, some customers will expect that they should be able to order a hamburger that is at a fixed number within that range and will be annoyed when told that the restaurant cannot tell them the precise number of calories of the menu item because of variations in preparation methods and raw ingredients. The restaurant industry is a highly competitive one, and achieving and maintaining customer satisfaction is paramount. A regulation that forces a restaurant chain to place information on its menus that will annoy and frustrate customers and raise questions that cannot be answered satisfactorily is very unfair to the restaurant chain.

10. The provision in the Regulation allowing for "disclaimers" is also impractical from a business perspective. In today's litigious world customers are used to seeing disclaimers on menus. The disclaimer, like "Skate at your own risk," does nothing to remove the annoyance of the customer nor does it provide a proper safe harbor from litigation.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on January 28, 2008.

_____
SCOTT RANDOLPH