UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

NEW YORK STATE RESTAURANT ASSOCIATION,

                              Plaintiff,

        -against-                         No. 2008 Civ. 1000 (RJH)

NEW YORK CITY BOARD OF HEALTH, NEW YORK
CITY DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, and THOMAS R. FRIEDEN, In His Official
Capacity as Commissioner of the New York City
Department of Health and Mental Hygiene,

                              Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY AND PRELIMINARY INJUNCTIVE RELIEF

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
(212) 442-0573

Gabriel Taussig
Mark W. Muschenheim
Fay Ng

Thomas Merrill
Office of the General Counsel
New York City Department of Health
and Mental Hygiene

Of Counsel

February 8, 2008

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ..................................................................................................... 4

I.      PLAINTIFF IS NOT ENTITLED TO DECLARATORY OR PRELIMINARY
        INJUNCTIVE RELIEF BECAUSE THE NLEA DOES NOT PREEMPT
        DEFENDANTS' AUTHORITY TO MANDATE THAT RESTAURANTS POST
        CALORIES ON MENUS AND MENU BOARDS....................................4

        A.      UNDER CONTROLLING SUPREME COURT LAW, THERE IS A
                PRESUMPTION AGAINST PREEMPTION OF REGULATIONS
                INVOLVING THE HISTORIC POLICE POWERS OF STATE AND
                LOCAL GOVERNMENTS...............................................4

        B.      THE NLEA EXPRESSLY PRESERVES THE POWER OF LOCAL
                GOVERNMENTS TO MANDATE THAT RESTAURANTS DISCLOSE
                NUTRIENT INFORMATION SUCH AS CALORIES.............................5

        C.      PLAINTIFF'S CIRCUITOUS CONSTRUCTION OF THE NLEA WOULD
                ELIMINATE THE AUTHORITY RESERVED TO THE STATES BY §
                343(q)(5)(A)(i) AND § 343-1(a)(4).....................................7

        D.      THE LANGUAGE IN THE FLOATING CLAUSE UPON WHICH
                PLAINTIFF RELIES CLEARLY WAS NOT REFERENCING
                MANDATED DISCLOSURES..............................................9

        E.      THE DISCLOSURE OF A NUTRITIONAL FACT IS NOT THE
                MAKING OF A NUTRIENT CONTENT CLAIM...............................12

II.     PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF
        BECAUSE HEALTH CODE 81.50 DOES NOT VIOLATE THE FIRST
        AMENDMENT.............................................................13

        A.      THE PROPER ANALYTICAL FRAMEWORK FOR JUDGING
                COMPELLED FACTUAL DISCLOSURE IS THE ZAUDERER
                REASONABLENESS STANDARD.........................................13

        B.      HEALTH CODE 81.50 IS RATIONALLY RELATED TO THE CITY'S
                LEGITIMATE INTEREST IN PROTECTING PUBLIC HEALTH...............20

CONCLUSION....................................................................28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

NEW YORK STATE RESTAURANT ASSOCIATION,

                                      Plaintiff,

       -against-

                                            08 Civ. 1000 (RJH)

NEW YORK CITY BOARD OF HEALTH, NEW YORK
CITY DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, and THOMAS R. FRIEDEN, In His Official
Capacity as Commissioner of the New York City
Department of Health and Mental Hygiene,

                                    Defendants.

---------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY AND PRELIMINARY INJUNCTIVE RELIEF

        Defendants the New York City Board of Health ("Board of Health"), the New York City Department of Health and Mental Hygiene ("DOH"), and Thomas R. Frieden, in his official capacity as Commissioner of DOH (collectively the "City"), by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submit this memorandum of law in opposition to plaintiff's motion for declaratory relief on its preemption claim and for preliminary injunctive relief on its preemption and First Amendment claim.

## PRELIMINARY STATEMENT

        An obesity epidemic continues to threaten the health of New Yorkers. The effects of this epidemic on New Yorkers and New York City, and the correlation between obesity and calorie intakes are explained in detail in the accompanying declaration of DOH Commissioner Thomas R. Frieden, M.D., M.P.H. ("Frieden Decl.") at ¶¶ 3,11-14.

In prior litigation between the same parties, this Court concluded "that the City has the power to mandate nutritional labeling by restaurants," but that the version of New York City Health Code ("Health Code") 81.50 at issue ("2006 HC 81.50") "offends the federal statutory scheme for voluntary nutritional claims" set forth in the Nutrition Labeling and Education Act ("NLEA") and thus was preempted. New York State Restaurant Ass'n v. New York City Board of Health, 509 F. Supp. 2d 351, 352-53 (S.D.N.Y. 2007) ("NYSRA I"). More specifically, 2006 HC 81.50 only applied to restaurants that had already voluntarily provided calorie information to the public; those restaurants that had done so were required to post calorie amounts on menus and menu boards. This Court held that the restaurants' voluntary act of making this calorie information available meant that these restaurants were making nutrient content claims governed by 21 U.S.C. § 343(r) and its broad preemption provision, and that 2006 HC 81.50 could thus not regulate how they were made. 509 F. Supp. 2d at 363. See also 21 U.S.C. § 343-1(a)(5); 21 C.F.R. § 101.10.

Following this Court's ruling, in January 2008 the Board of Health repealed 2006 HC 81.50 and reenacted a new Health Code 81.50. Frieden Decl. ¶ 7, & Ex. 2 (Notice of Adoption). Most significantly, Health Code 81.50's application is not triggered by the voluntary provision of calorie information; instead, it mandates that all restaurants that meet a certain definition (see Health Code 81.50(a)(1)) post calorie information on their menus and menu boards. As this Court held in NYSRA I, restaurants that provide this calorie information in response to a local government mandate are not making a voluntary § 343(r) nutrient content claim. 509 F. Supp. 2d at 363. Rather, they are providing calorie information in response to a local government mandate imposed pursuant to a valid exercise of police power which is not preempted by the NLEA. NYSRA I, 509 F. Supp. 2d at 356 (citing 21 U.S.C. § 343(q)(5)(A)(i)).

Consequently, since the new version of Health Code 81.50 imposes a mandate permitted by §
343(q)(5)(A)(i) and § 343-1(4), plaintiff's motion to declare it preempted must be denied.

Plaintiff's argument that Health Code 81.50 violates the First Amendment is
completely meritless. Health Code 81.50 requires the disclosure of factual information and does
not implicate any significant First Amendment interests. Assuming, arguendo, any First
Amendment interests are implicated, Health Code 81.50 is constitutional because it is rationally
related to the City's interest in reducing consumers' inaccurate perceptions and curbing the
health consequences associated with obesity. Zauderer v. Office of Disciplinary Counsel, 471
U.S. 626 (1985), and Nat'l Elec. Mfr. Assoc. v. Sorrell, 272 F.3d 104 (2d Cir. 2001), cert. denied,
536 U.S. 905 (2002). Plaintiff's motion for preliminary injunctive relief should consequently be
denied.

**ARGUMENT**

I.    **PLAINTIFF IS NOT ENTITLED TO DECLARATORY OR PRELIMINARY INJUNCTIVE RELIEF BECAUSE THE NLEA DOES NOT PREEMPT DEFENDANTS' AUTHORITY TO MANDATE THAT RESTAURANTS POST CALORIES ON MENUS AND MENU BOARDS.**

Plaintiff's motion for preliminary injunctive relief on its preemption claim should be denied since it has set forth no evidence that its members will be irreparably harmed.  <u>Cf.</u> <u>Toy Mfgrs of America, Inc. v. Blumenthal</u>, 806 F. Supp. 336, 340 (D. Conn. 1992), <u>aff'd</u>, 986 F.2d 615 (2nd Cir. 1993) (since defendants did not contest plaintiff's assertion, court assumes that plaintiff's monetary injury "is sufficiently great to justify a finding of no remedy at law").  Moreover, in cases such as here involving the public interest, "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." <u>Virginian Ry.</u> <u>Co. v. System Federation</u>, 300 U.S. 515, 552 (1937).  In any event, plaintiff is not entitled to such relief since it cannot establish a likelihood of success on the merits.  Plaintiff's motion for declaratory relief should similarly be denied.

A.    **UNDER CONTROLLING SUPREME COURT LAW, THERE IS A PRESUMPTION AGAINST PREEMPTION OF REGULATIONS INVOLVING THE HISTORIC POLICE POWERS OF STATE AND LOCAL GOVERNMENTS.**

There is a presumption against federal preemption of State and local legislation in fields, such as the regulation of food served in restaurants, traditionally reserved to state and local governments.  <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485 (1996); <u>Bates v. Dow</u> <u>Agrosciences LLC</u>, 544 U.S. 431, 449 (2005).  As this Court held, the presumption applies here

"where the City regulation addresses concerns about the health of its citizens." <u>NYSRA I</u>, 509 F.

Supp. 2d at 355.

**B.    THE    NLEA    EXPRESSLY    PRESERVES    THE    POWER    OF    LOCAL GOVERNMENTS    TO    MANDATE    THAT    RESTAURANTS    DISCLOSE NUTRIENT INFORMATION SUCH AS CALORIES.**

The NLEA amended the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301,

<u>et seq.</u> ("FDCA") to add two core subsections, 21 U.S.C. §§ 343(q) & (r).  Section 343(q)

mandates that certain nutritional facts, including calorie information, be disclosed on the label or

labeling of food intended for human consumption, such as that sold in supermarkets.[1]  <u>NYSRA I</u>,

509 F. Supp. 2d at 356.  It explicitly does not apply to restaurants.  21 U.S.C. § 343(q)(5)(A)(i).

Thus, per the express preemption provision at § 343-1(a)(4), state and local governments retain

the power to mandate by local law that restaurants disclose nutrition information.

Since "the plain wording of [a preemption provision] necessarily contains the best

evidence of Congress' pre-emptive intent," <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 664

(1993), the NLEA must be read as preserving the rights of local governments to enact regulations

like Health Code 81.50 that mandates that restaurants disclose the amount of calories in the food

they serve. <u>See</u> <u>NYSRA I</u>, 509 F. Supp. 2d at 357 (restaurant food is not preempted under 21

U.S.C. § 343-1(a)(4)); <u>Pelman v. McDonald's Corp.</u>, 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003)

(same).  Indeed, plaintiff concedes that § 343(q) "provides that restaurants are wholly exempt

from its nutrition labeling requirements."  Pl.'s Br. at 12.  <u>See also</u> <u>id.</u> at 13 ("Restaurants are

---

[1] 21 U.S.C. § 343(r), on the other hand, regulates claims voluntarily made by purveyors of food that either "characterizes the level of any nutrient" (known as nutrient content claims) or "characterizes the relationship of any nutrient … to a disease or health-related condition" (known as health claims).

completely exempt from subsection (q), and the corresponding preemption provision completely exempts regulation of restaurant labels from its reach.").

Health Code 81.50's mandate that certain restaurants[2] provide calorie information is consistent with the restaurant exemption set forth in § 343(q)(5)(A)(i), and is not preempted by the NLEA. Indeed, in <u>NYSRA I</u>, this Court held that that there was a:

> critical distinction between mandatory nutrient disclosures, whether required by § 343(q) or, with respect to restaurants, by state regulation, and voluntary nutrient content claims, subject to regulation under §343(r). The fact that the sources of a mandatory nutrient disclosure is a state or local government does not take the regulation out of the heartland of § 343(q) and convert a required disclosure into a voluntary claim regulated by § 343(r) and preempted by § 343-1(a)(5).

509 F. Supp. 2d at 362-63.[3]   Most significantly, this Court held that mandatory disclosure requirements, such as Health Code 81.50's, were not preempted since such requirements have "no voluntary aspect [and there is] no basis for arguing that the mandated disclosures are more

---

[2] Health Code 81.50's menu and menu board posting requirements apply to "Covered food service establishments." Health Code 81.50(c). "Covered food service establishments" are defined as a food service establishment ("FSE") "within the City of New York that is one of a group of 15 or more [FSEs] doing business nationally, offering for sale substantially the same menu items, in servings that are standardized for portion size and content, that operate under common ownership or control, or as a franchised outlets of a parent business, do business under the same name." Health Code 81.50(a)(1).

[3] Plaintiff also accuses the Court of having fashioned a "road map" neither briefed nor argued in NYSRA I, nor found in the statute or regulations. Pl.'s Br. at 22–26. Plaintiff is wrong. In fact, plaintiff's first lawsuit repeatedly noted that its members' obligations under 2006 HC 81.50 were triggered if they <u>voluntarily</u> disclosed calorie information. <u>See, e.g.</u>, Muschenheim Decl., Ex. A (NYSRA I Pl.'s Br. at 1, 2, 5, 6, 9 & 10). For instance, plaintiff argued that there "can be no doubt that [2006 HC 81.50]" -- which was only triggered if a restaurant <u>voluntarily</u> disclosed calorie information -- "imposes requirements 'respecting any claim of the type described in section 343(r) (1)' because publishing calorie content is a nutrition claim under that section." <u>Id.</u> at 13 (citations omitted).

properly considered the regulation of voluntary claims subject to § 343(r)." NYSRA I, 509 F.

Supp. 2d at 363.

## C.    PLAINTIFF'S CIRCUITOUS CONSTRUCTION OF THE NLEA WOULD ELIMINATE THE AUTHORITY RESERVED TO THE STATES BY § 343(q)(5)(A)(i) AND § 343-1(a)(4).

As noted previously, plaintiff admits that § 343(q)'s "corresponding preemption

provision [§ 343-1(a)(4)] completely exempts state regulation of restaurant labels from its

reach." Pl.'s Br. at 13. See also NYSRA I, 509 F. Supp. 2d at 357-58 (citing Congressional and

FDA statements indicating same). Disregarding black letter law that courts "must … give effect

to the structure and purpose of the statute as a whole," NYSRA I, 509 F. Supp. 2d at 361,

plaintiff nevertheless attempts to render meaningless Congress' deference to traditional state

powers[4] with a strained reading of the NLEA designed to bring any locally imposed labeling

mandate within the realm of § 343(r). Plaintiff's proposed construction is directly contrary to the

purposes of the NLEA,[5] and disregards the intent of Congress to give local governments the

authority to decide what disclosure requirements should apply to restaurants  See, e.g., 136

Cong. Rec. H5836 (July 30, 1990) (Rep. Waxman) ("[A]ny preemption provision must recognize

the important contribution that the State can make in regulation, and it must leave a role for

states.").

---

[4]  See NYSRA I, 509 F. Supp. 2d at 361 (section 343-1(a)(4) "expressly carved out restaurants" from the scope of nutrition labeling requirements, and noting that "both a sponsor of the [NLEA] and the agency responsible for adopting [the implementing regulations] have recognized the authority of states to require restaurants to disclose nutritional content to its customers" (citations omitted)).

[5]  See 136 Cong. Rec. H5843 (July 30, 1990) (Rep. Waxman) (one of the purposes of the NLEA was to "give consumers nutrition information about the products they are consuming").

Ironically, plaintiff's argument runs against the fundamental goal of the NLEA. Prior to adoption of the NLEA, there was generally no required nutrition labeling on food products, nor were there generally local laws requiring restaurants to provide such information. Nevertheless, local authorities had authority to mandate nutrition labeling in restaurants. Even plaintiff makes no claim that federal law preempted local regulation in this area prior to the NLEA.

The purpose of the NLEA was to <u>increase</u> the nutrition information provided to consumers. Thus, section 343(q) directed the FDA to issue regulations requiring that the label on nearly every food product contain this information. In § 343(q)(5)(A)(i) Congress exempted restaurants from the requirements in § 343(q)(1)-(4). Essentially, plaintiff has attempted to transform this exemption from federal regulation into a preemption of state and local regulation. The net effect of this argument, if accepted, would be that under the NLEA both the federal authorities and state and local governments are barred from requiring that restaurants provide their customers with nutrition information. Such a result would be directly contrary to the purpose of the NLEA, as expressed in the statutory language and in its legislative history.

Nevertheless, plaintiff argues that any statement of nutritional amount -- whether mandated to inform consumer choice or voluntarily asserted to market a product -- is always a § 343(r) nutrient content claim unless it appears within the familiar § 343(q) nutrition fact panel on food products. Thus, because the nutrition fact panel requirements do not apply to food served in restaurants, any locally mandated statement is, in the view of plaintiff, a § 343(r) nutrient content claim preempted by § 343-1(a)(5). This broad reading of § 343(r) claims, however, clearly is wrong because it renders § 343(q)(5)(A)(i) meaningless. <u>Cf. NLEA I</u>, 509 F. Supp. 2d at 362

(plaintiff's expansive definition of a § 343(r) claim would "read out of existence the state authority preserved by § 343-1(a)(4)").

The NLEA's labeling mandates were intended to be comprehensive. They extend not only to canned and processed foods, but also to fresh fruits and vegetables. See 21 U.S.C. § 343(q)(4). There are only two areas of food not touched by § 343(q): meat and poultry products, because they are regulated by the U.S. Department of Agriculture (Public Law 101-535, §9, 104 Stat. 2365);[6] and (2) food served in restaurants, because it is regulated by states. The structure of the NLEA demonstrates that Congress intended to expand nutrition labeling for all food products and it is inconceivable that at the same time it both refused to give the FDA authority over § 343(q) type restaurant labeling and preempted state and local governments from requiring such labeling, thereby leaving no government body able to require that restaurants provide nutrition information to their patrons.

## D.   THE LANGUAGE IN THE FLOATING CLAUSE UPON WHICH PLAINTIFF RELIES CLEARLY WAS NOT REFERENCING MANDATED DISCLOSURES.

Plaintiff argues that Congress intended § 343(r), which applies to nutrient content and health claims, to preempt state and local authorities from mandating nutrition labeling in restaurants. Specifically plaintiff relies on the floating clause in § 343(r)(1) which states:

> A statement of the type required by paragraph (q) that appears as part of the nutrition information required or permitted by such paragraph is not a claim which is subject to this paragraph . . . .

On its face, this provision only references statements appearing on the labels or labeling of food subject to the requirements of § 343(q), making clear that statements on the nutrition label are

---

[6] The USDA subsequently adopted nutrition labeling requirements for meat and poultry.  9 C.F.R. § 317.300, et seq.

not claims subject to the additional requirements of § 343(r).[7] This provision has no bearing on food sold in restaurants because it is not subject to the requirements of § 343(q). Nothing in it suggests that the states are preempted from imposing nutrition requirements on menus whereas, as discussed above, the language in § 343(q) and § 343-1(a)(4) demonstrates the opposite.

      Plaintiff also relies on a statement in the House Committee report to argue that § 343(r) should apply to all statements regarding the amount of nutrients, "including a statement identical to that on the nutrition label which appears on the front panel of the product." See Pl.'s Br. at 16. But, again, this statement on its face applies solely to "a statement identical to that on the nutrition label," and thus has no application to a statement required to be placed in a restaurant. Such a statement can never be "identical to that on the nutrition label" because the nutrition labeling provisions do not apply to restaurants. Thus, the purpose of the statement was only to make it clear that FDA would have jurisdiction over all nutrition statements on the food label: if the statement appeared on the nutrition fact panel, subsection (q) would apply; if the statement appeared outside the nutrition fact panel but on the food label, then subsection (r) would apply. Nothing in this Report suggests that Congress intended to preempt state and local governments, whereas again the statutory language and the explicit statements in the legislative history demonstrate exactly the opposite.

---

[7] Plaintiff's reliance on a § 343(q) regulation, 21 C.F.R. § 101.9(j)(2), to support its expansive reading of § 343(r) is misplaced. Pl.'s Br. at 12. To start, that provision was not promulgated under § 343(r), but rather under § 343(q). If 21 C.F.R. § 101.9(j)(2) is construed in the expansive manner plaintiff suggests, the FDA in attempting to regulate "nutritional information in any context" will have exceeded the statutory authority of § 343(q), which explicitly does not apply to restaurant labeling. § 343(q)(5)(A)(i). Finally, to the extent that plaintiff is trying to argue implied preemption, such a claim is foreclosed by Public Law No. 101-535, § 6(c), 104 Stat. 2535, 2364. See NYSRA I, 509 F. Supp. 2d at 355.

If the floating clause is construed to make any statement of amount not expressly required by the nutritional fact label a "nutritional claim," the state authority preserved by § 343-1(a)(4) is rendered meaningless.[8] This cannot be the case. See Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995) (courts must interpret statute "as a symmetrical and coherent regulatory scheme"). In NYSRA I, this Court followed the plain meaning of "claim" and held that § 343(r) was only intended to apply to statements of amount that are voluntarily made, and not to those required by § 343(q) or similar mandates. 509 F. Supp. 2d at 360-361. In arguing that this conclusion was wrong, plaintiff selectively focuses only on the word "required" in the floating clause.

Moreover, the entire language of the floating clause demonstrates that it was not intended to remove statements mandated by other laws from the realm of § 343(q) into the realm of § 343(r). The calorie postings required by Health Code 81.50 are "statement[s] of the type required by" § 343(q) and, since § 343(q)(5)(A)(i) permits local governments to mandate that restaurants disclose nutrition information, they are also statements "permitted by such paragraph."

Finally, plaintiff's contention that the "voluntary/mandatory distinction leads to absurd results" is simply wrong. Pl.'s Br. at 25-26. Plaintiff's contention that a local government could mandate that food purveyors make § 343(r) claims (i.e. "low in fat") in a particular manner is not accurate since the NLEA and its implementing regulations contain

---

[8] Plaintiff also argues that the existence of § 343(r)(5)(B) claims and the § 343-1(b) petition process somehow justifies an interpretation that eliminates the § 343-1(a)(4) restaurant preemption exception. Pl.'s Br. at 27-28. These provisions add nothing to the analysis since they are not affected, one way or another, by the § 343-1(a)(4) restaurant preemption exception. Similarly, plaintiff's contention relating to the viability of state based tort claims is not dependent on the existence of the restaurant preemption exception.

expansive preemption provisions relating to voluntary § 343(r) claims.  Similarly, plaintiff's contention that a local government could dictate that certain information be identified on packaged food is also misplaced in light of the § 343(q) preemption provisions.  See 21 U.S.C. § 343-1(a)(4).

## E.    THE DISCLOSURE OF A NUTRITIONAL FACT IS NOT THE MAKING OF A NUTRIENT CONTENT CLAIM.

Separate and apart from the forgoing and as an alternative argument, a restaurant that merely provides calorie values is not making a nutrient content claim and thus is not subjecting itself to § 343(r) and its preemption provision, 21 U.S.C. § 343-1(a)(5).[9]  A nutrient content claim is not made merely by disclosing the caloric content of an item of food.  That fact is defined by statute as nutritional information.  21 U.S.C. § 343(q)(1)(C).  In contrast, a nutrient content claim must "characterize the level of any nutrient" in the food it is describing.  See 21 U.S.C. § 343(r)(1)(A).

Posting calorie values on a website or in a leaflet (as some members of plaintiff do) or on a menu in compliance with Health Code 81.50 is not equivalent to making a nutrient content claim about those values.[10]  Given local governments' historic police powers, even a

---

[9] Defendants recognize that this Court rejected this argument in the prior litigation, but raise it to preserve it for appellate review.  NYSRA I, 509 F. Supp. 2d at 360 ("the Court finds that under the FDA regulations, statements as to nutrient amount, including calorie content, may be a 'claim' subject to the requirements of § 343(r) and its implementing regulations" (emphasis in original, footnotes omitted)).  Defendants appealed NYSRA I, but after the new Health Code 81.50 was adopted, the parties stipulated that this appeal was dismissed as moot.  Muschenheim Decl., Ex. C (1/23/08 NYSRA I Stip.).

[10] See, e.g., Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302, 2310 (Jan. 6, 1993) ("the statement '100 calories' or '5 grams of fat' on the principal display panel of a food would be a simple statement of amount that, by itself, conveys no implied characterization of the level of the nutrient").

"plausible" reading favoring preemption should be rejected since courts "nevertheless have a duty to accept the reading [of the statute] that disfavors preemption." Bates, 544 U.S. at 449.

> **II.    PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF BECAUSE HEALTH CODE 81.50 DOES NOT VIOLATE THE FIRST AMENDMENT.**

**A.    THE PROPER ANALYTICAL FRAMEWORK FOR JUDGING COMPELLED FACTUAL DISCLOSURE IS THE ZAUDERER REASONABLENESS STANDARD.**

The number of calories that a food contains is a fact that is either true or not. Health Code 81.50 thus merely requires the posting of factual information. This requirement is no different than numerous other disclosure requirements mandated by federal and state law, including the NLEA. In fact, in discussing the First Amendment implications of proposed rules under the NLEA, the FDA noted that "parts of the act and these regulations may have an incidental effect on speech in a narrowly defined area, food labeling. . . . The Supreme Court, however, 'has recognized the strong government interest in certain forms of economic regulation, even though such regulation may have an incidental effect on rights of speech and association.'" 58 Fed. Reg. 2478, 2525 (Jan. 6, 1993). See Tennessee Secondary Sch. Athletic Ass'n v. Brentwood Academy, 127 S. Ct. 2489, 2494 (2007) ("Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities, corporate proxy statements, the exchange of price and product information among competitors . . . . Each of these examples illustrates that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity.").

Thus, not every regulation which has an impact on speech implicates significant First Amendment interests. Assuming <u>arguendo</u>, that Health Code 81.50 implicates some First Amendment interests, <u>Zauderer v. Office of Disciplinary Counsel</u>, 471 U.S. 626 (1985), and <u>Nat'l Elec. Mfr. Assoc. v. Sorrell</u>, 272 F.3d 104 (2d Cir. 2001), <u>cert. denied</u>, 536 U.S. 905 (2002) are controlling and mandate the application of the "reasonableness" standard in determining whether Health Code 81.50 violates the First Amendment rights of plaintiff's members.

In <u>Zauderer</u>, the Supreme Court developed an analytical framework when a governmental regulation "compels" truthful disclosure of purely factual, non-opinion, non-political, non-ideological information to the consumer. At issue in <u>Zauderer</u> was a state attorney disciplinary rule providing that an attorney who advertised his availability to bring Dalkon Shield personal injury cases on a contingency basis must make a fuller disclosure about litigation costs if she did not prevail on her claim. 471 U.S. at 630. The advertisement stated that if the litigant lost the case, "no legal fees," meaning attorney fees, would be owed. <u>Id.</u> at 631. But the advertisements were deemed deceptive because they omitted the fact that the "significant litigation costs" of bringing the lawsuit would be owed. <u>Id.</u> at 650.

In holding that the disciplinary rule did not violate the First Amendment, the Court specifically drew a distinction between regulations that compelled disclosure and those that restricted speech. The Court stated:

> Ohio has not attempted to prevent attorneys from conveying information to the public; it has only required them to provide somewhat more information than they might otherwise be inclined to present.

<u>Id.</u> at 650. The Court specifically rejected the argument that the disclosure requirement, in order to be constitutional, had to be "the least restrictive means" or "not more extensive than

necessary" to serve the governmental interest, the standard of scrutiny set forth in <u>Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York</u>, 447 U.S. 557 (1980). The Court in <u>Zauderer</u> held that commercial speech could be compelled so "long as disclosure requirements <u>are reasonably related to the State's interest</u> in preventing deception of consumers." 471 U.S. at 651 (emphasis added). The Court explained that this relatively lenient standard was appropriate "[b]ecause the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," and the speaker's "constitutionally protected interest in <u>not</u> providing any particular factual information in his advertising is minimal." <u>Id.</u> (emphasis in original).

Following <u>Zauderer</u>, the Second Circuit, in <u>Sorrell</u> applied the reasonableness standard to uphold a regulation requiring warnings on products containing mercury. The Court held that "mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interest." 272 F.3d at 114. The Court reasoned that "disclosure furthers, rather than hinders, the First Amendment goal of the discovery of truth and contributes to the efficiency of the 'marketplace of ideas.'" <u>Id.</u> .

Thus, the Second Circuit concluded:

> In sum, mandating that commercial actors disclose commercial information ordinarily does not offend the important utilitarian and individual liberty interests that lie at the heart of the First Amendment. The Amendment is satisfied, therefore, by a rational connection between the purpose of a commercial disclosure requirement and the means employed to realize that purpose.

<u>Id.</u> at 114-115. <u>See also</u>, <u>European Connection & Tours, Inc. v. Gonzales</u>, 480 F. Supp. 2d 1355, 1371 (N.D. Ga. 2007) (government "disclosure requirements are properly analyzed under

Zauderer and must be upheld if there is a reasonable relationship to a legitimate governmental interest"); Entertainment Software Ass'n v. Blagovech, 469 F.3d 641, 651-52 (7th Cir. 2006) (distinguishing between "opinion-based" compelled speech and "purely factual disclosures," such as "whether a particular chemical is within any given product"); BellSouth Adver. & Pub. Corp. v. Tenn., 79 S.W.3d 506 (Tenn. 2002), cert. denied, 537 U.S. 1189 (2003) (Zauderer, not United States v. United Foods, Inc., 533 U.S. 405 (2001), supplies the proper standard in cases involving factual commercial disclosure requirements).

Plaintiff argues that Zauderer should only be applied to regulations that are designed to prevent deception. Pl.'s Br. at 41-42. The permissive standard of review set forth in Zauderer, however, is to be applied whenever a regulation compels the disclosure of uncontroverted facts because an entity's "constitutionally protected interest in not providing any particular factual information in . . . advertising is minimal." 471 U.S. at 651 (emphasis in original). It is to be applied regardless of the government's purpose in mandating the disclosure of uncontroverted facts. See Sorrell, 272 F.3d at 115 (compelled disclosure valid pursuant to Zauderer even though the issue was not the prevention of consumer confusion or deception per se, but rather to better inform consumers about the products they were purchasing); see also, Pharmaceutical Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 310 fn 8 (1st Cir. 2005), cert. denied, 126 S. Ct. 2360 (2006) (Zauderer's applicability is not limited only to speech preventing deception) (both cases decided after United Foods).

In any event, in its Statement of Basis and Purpose in the Notice of Adoption for Health Code 81.50, the Board of Health specifically discussed the fact that consumers have distorted perceptions of calorie count because of the misleading information gap about calories. Frieden Decl., Ex. 2 (Notice of Adoption, at 5-6). Diners at chain restaurants underestimate the

numbers of calories in the foods they order. Frieden Decl. at ¶¶ 26-28. Plaintiff's members boast of their commitment to providing nutrition information to their customers, see, e.g., Declaration of Mason Smoot, ¶ 4 and Declaration of Julie Haugen, ¶ 3, but their failure to prominently display calorie information contributes to the misperceptions that consumers have about calories. Burger King puts nutrition information on brochures and tray liners, where few customers see it. Haugen Decl. at ¶¶ 11-12; Frieden Decl. ¶¶ 42-43. At McDonald's, information is provided on brochures, a website and after-the-purchase tray liners and packaging, where similarly it is seen by few customers. Declaration of Debra Demuth, ¶10; Frieden Declaration ¶¶ 42-43.[11] Thus, even if Zauderer and Sorrell were limited to regulations addressing misleading information, they would nevertheless be controlling in this case.

Plaintiff argues that a heightened scrutiny test must be applied because Health Code 81.50 is compelling its members to convey a message. Pl.'s Br. at 32-33. Specifically, plaintiff argues that "the Regulation forces restaurants to use their most important tool for communicating with their customers to voice the government's point of view, namely that patrons must consider the caloric content of food when ordering in a restaurant, and that calories are the only nutritional criterion that patrons need to consider." Pl.'s Br. at 30 (emphasis in original). Plaintiff also argues, however, that the "vice of Regulation 81.50 exists regardless of whether a restaurant has - or has articulated - a specific disagreement with the City's message." Pl.'s Br. at 32.

In Johanns v. Livestock Marketing Ass'n, 544 U.S. 550, 557 (2005), the Court explained that it has recognized only two kinds of compelled-speech cases: true "compelled-

---

[11] Both chains oppose putting calorie information on their menu boards because "gridlock" might form if the information were actually seen and used by consumers. See Munoz Decl. at ¶ 8; Smoot Decl. at ¶ 5.

speech cases," in which an individual must personally express an opinion with which he disagrees, and "compelled-subsidy cases." <u>See, e.g.</u>, <u>West Virginia Bd. of Educ. v. Barnette</u>, 319 U.S. 624 (1943) (requiring school children to recite the Pledge to Allegiance); <u>Wooley v. Maynard</u>, 430 U.S. 705, 706 (1977) (requiring cars to bear license plates with state's motto: "Live Free or Die"); <u>Pacific Gas & Electric Co. v. Public Utilities Comm'n of California</u>, 475 U.S. 1 (1986) (a requirement that a utility company include in its billing envelopes messages prepared by a consumer organization).

In <u>United Foods</u>, 533 U.S. at 408, relied on by plaintiff, the Court invalidated a statute which established the Mushroom Council and authorized it "to impose mandatory assessments upon handlers of fresh mushrooms" for certain projects. The monies collected were to be spent on generic advertising to promote the sale of mushrooms. One mushroom handler successfully challenged the act on the grounds that he was paying an assessment to promote the point of view that all mushrooms were worth consuming. The handler who challenged the act wanted, instead, to convey the message that his mushrooms were superior to those grown by others. <u>Id.</u>

Reliance on these line of cases involving compelled speech is completely misplaced. Here, the inclusion of factual information on the menu conveys no point of view. <u>See</u>, <u>Environmental Defense Center, Inc. v. E.P.A.</u>, 344 F.3d 832, 850 (9th Cir. 2003), <u>cert denied</u>, 541 U.S. 1085 (2004) ("Informing the public about safe toxin disposal is non-ideological; it involves no 'compelled recitation of a message' and no 'affirmation of belief'").

Plaintiff's argument, if accepted, would make every law and regulation which required information a disclosure constitutionally infirm. As the Second Circuit noted in <u>Sorrell</u>:

> Innumerable federal and state regulatory programs require the disclosure of product and other commercial information. See, e.g., . . . 15 U.S.C.§ 1333 (tobacco labeling); 21 U.S.C. § 343(q)(1) (nutritional labeling); 33 U.S.C. § 1318 (reporting of pollutant concentrations in discharges to water); 42 U.S.C. §11023 (reporting of releases of toxic substances); 21 C.F.R. § 202.1 (disclosures in prescription drug advertisements); 29 C.F.R. § 1910.1200 (posting notification of workplace hazards); Cal. Health & Safety Code § 25249.6 ("Proposition 65"; warning of potential exposure to certain hazardous substances); N.Y. Envtl. Conserv. Law §33-0707 (disclosure of pesticide formulas).

272 F.3d at 116. See also BMW of North America, Inc. v. Gore, 517 U.S. 559, 571 fn 15 (1996) ("disclosure requirements are, of course, a familiar part of our law"); Rubin v. Coors Brewing Co., 514 U.S. 476, 492 (1995) ("In the commercial context … government … often requires affirmative disclosures that the speaker might not make voluntarily.").

In addition to the required disclosures noted in Sorrell, labeling requirements such as warnings on bottles of alcohol that drinking may be dangerous to the health of pregnant women, as well as the notations on menus regarding the consumption of undercooked products, would be subject to strict scrutiny.

Plaintiff's argument that the posting of factual information could be understood by a consumer as an expression of an opinion is far fetched. In any event, plaintiff's members are free to post additional information. Plaintiff argues that this suggestion would result in "cramped", "cluttered" and "confused" menus. Pl. Br. at 32. Menu board clutter, however, is a matter of design, and not a question of burdening protected speech. See Meese v. Keene, 481 U.S. 465, 481 (1987) (in upholding an act which required labeling on movies made by foreign governments as "political propaganda," the Court noted that "Congress simply required the disseminators of such material to make additional disclosures that would better enable the public

to evaluate the import of the propaganda. . . . Disseminators of propaganda may go beyond the disclosures required by statute and add any further information they think germane to the public's viewing of the materials"); see also, Tennessee Secondary Sch. Athletic Ass'n, 127 S. Ct. at 2495 ("Given that TSSAA member schools remain free to send brochures, post billboards, and otherwise advertise their athletic programs, TSSAA's limited regulation of recruiting conduct poses no significant First Amendment concerns"); PruneYard Shopping Center v. Robins, 447 U.S. 74, 87-88 (1980) (shopping centers were "free to publicly dissociate themselves from the speakers or handbillers").[12]

As the Second Circuit recognized in Sorrell, subjecting purely factual commercial disclosure requirements to heightened scrutiny would be contrary to the principles underlying the commercial speech doctrine, which is to foster the free flow of information, here information that is critical to promoting public health. See Ibanez v. Florida Dep't of Business & Professional Regulation, 512 U.S. 136, 142 (1944) ("'disclosure of truthful, relevant information is likely to make a positive contribution to decision-making than is concealment of such information'").

In sum, if Health Code 81.50 implicates any First Amendment concerns, it should be analyzed under the reasonableness standard set forth in Zauderer and applied in Sorrell because it mandates disclosure of facts in a purely commercial context.

## B.    HEALTH CODE 81.50 IS RATIONALLY RELATED TO THE CITY'S LEGITIMATE INTEREST IN PROTECTING PUBLIC HEALTH.

As more fully discussed in Dr. Frieden's Declaration and the Notice of Adoption annexed thereto as Exhibit 2, New York City is facing an obesity epidemic and the health

---

[12]    Even if Health Code 81.50 could be characterized as a compelled government speech case, the Supreme Court in Johanns limited the application of United Foods, stating that there is no First Amendment right not to fund government speech. 544 U.S. at 564.

consequences associated with obesity. Heart disease, stroke, cancer and diabetes are four of the five leading causes of death in New York City in 2006 with 38,337 victims (69.2% of all deaths). These conditions are significantly more prevalent among persons who are obese. Frieden Decl. at ¶ 8. More than 9 percent, or half a million New York adults have diagnosed diabetes, and another 200,000 have it but do not know it; this number has increased over the past decade. About 23.5%, or 1.3 million New Yorkers, have higher than normal fasting blood sugars that, while not in the range of diabetes, put them at high risk for developing diabetes. Among New Yorkers who have diabetes, 80% are overweight or obese. Both diabetes and obesity have increased rapidly in New York City, as they have nationally. Frieden Decl. at ¶ 12 & Ex. 2 (Notice of Adoption, at 2-3).

Health Code 81.50's requirement that calories be posted at the point of sale is reasonably related to the City's substantial interest in curbing the obesity epidemic. First, an estimated one third of daily caloric intake for all Americans comes from foods purchased outside of the home. Frieden Decl. at ¶ 4 & Ex. 2 (Notice of Adoption, at 2). Moreover, eating out is generally associated with increased calorie intake. Frieden Decl. at ¶¶ 21-23 & Ex. 2 (Notice of Adoption, at 3-4). Although the NLEA, 21 U.S.C. § 343(q), has made nutrition information available to consumers on packaged foods purchased in retail stores, this requirement does not apply to restaurants.

Calories are recognized as the single most important element of nutrition information to address the obesity epidemic. Frieden Decl. at ¶¶ 15-17. See also Declaration of Marie Pierre St.Onge, at ¶¶ 7-10 filed herewith. In a comment submitted after 81.50 was published, even the National Restaurant Association acknowledged that a daily decrease of 100 calories would prevent weight gain in most of the population." Frieden Decl. ¶ 45.

In fact, the FDA's Obesity Working Group ("OWG") concluded in its 2005 work with a report entitled "Calories Count" that "weight control is primarily a function of balance of the calories eaten and calories expended on physical and metabolic activity." Frieden Decl. at ¶ 17 & Ex. 5.

Additionally, the final report of the FDA-commissioned Keystone Forum on Away-From-Home Foods recommends that food service establishments "provide consumers with calorie information in a standard format that is easily accessible and easy to use." Frieden Decl. ¶ 29 & Ex. 9 (Keystone Forum, at 76 (Recommendation 4.1)). Health Code 81.50, which requires prominently posting calorie information near menu items, is consistent with this recommendation.

The Keystone Forum did recognize that although there may be "cons" to posting on menus and menu boards, as there were to all the other posting options, there were many "pros" to this approach, including: (1) "Easy to find and linked to an essential information method in the business;" (2) point of purchase and decision-making; (3) "Can use and compare options at point of purchase;" (4) allows consumers to compare price and nutrition information in one place. Frieden Decl. Ex. 2, at 129.[13] See also President's Cancer Panel. Promoting Healthy

---

[13] In her January 29, 2008 declaration, Debra Demuth, the Global director of Nutrition of McDonald's Corporation quoted the actual recommendation of the Keystone Report as follows:

> Recommendation 4.1: Away from home food-establishments should provide consumers with calorie information in a standard format that is accessible and easy to use. This recommendation emphasizes accessibility and ease of use – calorie content next to price on menu boards may not be the solution.

Demuth Decl. at ¶ 12. Although the Forum discussed "pros" and "cons" with respect to different posting options (Frieden Decl. Ex. 9 at 128-134), the language of the last sentence of Demuth's

Lifestyles. Policy, Program and Personal and Recommendations for Reducing Cancer Risk. 2006-2007 Annual Report. U.S. Department of Health, National Institutes of Health, National Cancer Institute. Bethesda, Maryland, 2007 (Panel recommendation: "Make nutrition information on restaurant foods readily available on menus and understandable to consumers.").

Plaintiff argues that calorie information is useless if consumers are unaware of their daily recommended calorie intake. However, even if consumers do not know their total recommended daily calorie intake, they can compare calorie levels of different menu items and make more informed decisions. Frieden Decl. at ¶ 34. This is particularly true because consumers are generally familiar with calories from nutrition labels on foods they purchase for consumption at home. Three-quarters of American adults report using food labels, and about half (48%) report that nutrition information on food labels has caused them to change their food purchasing habits. The calorie section is the most frequently consulted part of the Nutrition Facts panel on packaged foods, with 73% of consumers reporting that they look at it. See Frieden Decl. at ¶ 31 & Ex. 2 (Notice of Adoption, at 2).

Having calorie information readily apparent at the point of sale is the most effective way to get this information to consumers eating outside their homes. Currently, restaurants covered under Health Code 81.50 do not effectively transmit calorie information. Current voluntary attempts by some restaurants fail because the information is usually not displayed where consumers are making their choices and purchases, such as when a restaurant's nutrition information is available on the internet. While such information may also be available in brochures, on placemats covered with food items, or on food wrappers, where the information

---

recitation of the Recommendation 4.1 that "menu boards may not be the solution" is not part of Recommendation 4.1. Frieden Decl. Ex. 9, at 76.

is hard to find or difficult to read and only accessible after the purchase is made. Thus the information as provided has little impact on choice. Frieden Decl. ¶¶ 40-46.

In May and June 2007, DOH surveyed 11,865 diners at a random sample of 274 of the restaurants covered by the previous 2006 HC 81.50. With the exception of Subway, less than 8% of customers reported seeing calorie information in the restaurant where they had purchased food. The percentage was particularly low (< 5%) among those restaurants (McDonald's, Dunkin' Donuts, Burger King, and Yum Brands locations) that have submitted declarations in support of plaintiff's motion, and whose declarations claim that they provide extensive nutrition information to customers. Frieden Decl. ¶¶ 42-45. Burger King and McDonald's have put nutrition information on websites. All website hits for McDonald's would represent a rate of 0.004% nutrition information hits per meal. Visits to Burger King's web site translates to 0.0355% of meals served for which nutritional information has been obtained electronically. Frieden Declaration ¶¶ 37-38.

A study found that when calorie information is readily available, high-calorie menu items are chosen 24% to 37% less often. Frieden Decl. ¶32. National polls indicate that 62 to 87% of respondents would like calories to be listed on menus or menu boards in chain restaurants. Frieden Decl. ¶32. DOH's survey shows that when calorie information is readily available, it leads to fewer calories being ordered.

As discussed in Dr. Frieden's Declaration, not only do consumers underestimate the calorie count of less-healthy items, even experienced nutrition professionals have difficulty accurately estimating calorie count of restaurant food. A study indicated that the more calories there are in a meal, the more people underestimate the amount they believe they eat. Frieden Decl. at ¶¶ 26-28 & Ex. 2 (Notice of Adoption, at 5-6).

Plaintiff's argument that Health Code 81.50 will have no impact on curbing obesity because it applies to only 10% of the City's restaurants (Pl. Br., at 37) is meritless. First, this percentage is not insignificant; when market share is taken into consideration, these restaurants constitute approximately 34.7% of restaurant visits in the NYC metropolitan area. Even using plaintiff's 10% figure in New York City, more than 145 million, and possibly more than 500 million, meals would be affected by this regulation each year. See Frieden Decl. at ¶¶ 47-51. Moreover, the Court in Zauderer rejected this type of "under inclusive" argument and stated: "as a general matter, governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied." 471 U.S. at 651, fn 14. See also Mainstream Marketing Services, Inc. v. FTC, 358 F.3d 1228, 1238 (10th Cir.), cert. denied, 543 U.S. 812 (2004) ("the First Amendment does not require that government regulate all aspects of a problem before it can make progress on any front").

Plaintiff argues that there is no empirical data that posting calorie counts on menu boards will affect consumer choice and that more research has to be conducted. Pl. Br. at 35. Plaintiff also submitted a declaration by David B. Allison who concluded that there is not competent evidence that the posting of calories will reduce obesity. Dr. Allison also asserted that DOH's survey was flawed. Pl. Br. at 36. Dr. Allison's specific assertions are countered in Dr. Frieden's Declaration at ¶¶ 22, 65-68 and the Declarations of Kiyah J. Duffey, Mary T. Bassett, Marie-Pierre St-Onge, and Marlene Schwartz, to which the Court is respectfully referred.

Defendants submit, however, that although we can engage in a battle among experts as to what measures should be taken to address the obesity epidemic, that would not be dispositive of the issue before this Court. The issue is not whether everyone is in agreement with

Health Code 81.50's approach.  The inquiry is whether Health Code 81.50 is rationally related to the City's legitimate and substantial interest in reducing inaccurate perceptions of consumers and curbing obesity and the health consequences associated with it.

Health Code 81.50 is supported by the wealth of studies set forth in Dr. Frieden's Declaration, the Notice of Adoption, and the Declarations submitted in opposition to plaintiff's motion.  Even if that were not the case, there is no requirement that Health Code 81.50 be supported by empirical data with undisputed scientific proof.  In Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 555 (2001), the Court, in applying the third Central Hudson factor, stated:

> We do not, however, require that "empirical data come . . . accompanied by a surfeit of background information . . . We have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and 'simple common sense.'"

Certainly, if such proof is not necessary under Central Hudson, it is not required under the more lenient standard set froth in Zauderer, which is applicable here.

For all the above reasons, as set forth in Dr. Frieden's Declaration, the studies referred therein and in the Notice of Adoption, and the Declarations submitted herein,[14] there is a rational relationship between Health Code 81.50 and the City's legitimate interest in reducing inaccurate perceptions of consumers and curbing obesity and the health consequences associated with it.  Thus, Health Code 81.50 does not violate the First Amendment.  See Zauderer & Sorrell.

---

[14] In addition to Commissioner Frieden's Declaration, submitted herewith are declarations from the following:  Mary Bassett, Bruce Krueger,  Kiyah Duffey, Marie-Pierre St-Onge, Xavier Pi-Sunyer, Marlene Schwartz and Barry M. Popkin.

Finally, even applying the intermediate test of <u>Central Hudson</u>, Health Code 81.50 still survives constitutional scrutiny. There is no dispute as to the first two prongs; plaintiff admits that obesity is a major public health concern that defendants should be addressing. <u>See</u> Allison Decl. at 9-10. As stated earlier, in demonstrating the third prong of <u>Central Hudson</u>, whether the regulation directly advances the governmental interest asserted, defendants can rely on "studies," "consensus" and "simple common sense." Clearly, the City has met that burden: increased knowledge about calories is associated with reduced consumption, reduced obesity, and reduced diabetes; customers use calorie information when it is posted. With respect to the fourth prong, whether the restriction is not more extensive than necessary to serve the government's interests, the Supreme Court has rejected the "least restrictive" approach to the regulation of commercial speech. Rather, the City must demonstrate "a reasonable fit" between the City's interests and the means chosen to accomplish those goals. This means "a fit that is not necessarily perfect, but is reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served' . . ." <u>Bd. of Trustees v. Fox</u>, 492 U.S. 469, 480 (1969). As plaintiff acknowledged, the menu boards are "their most important tool for communicating with their customers." Pl.'s Br. at 30. Clearly, posting the calories there would be the most effective way of getting this information to the consumer, especially in light of how other methods of communicating such information have failed.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiff's motion for declaratory relief on its preemption claim and for preliminary injunctive relief on its preemption and First Amendment claims.

Dated:        New York, New York
              February 8, 2008

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
(212) 442-0573

By:
        Mark W. Muschenheim (MM 0498)
        Assistant Corporation Counsel


Gabriel Taussig
Fay Ng

Thomas Merrill
Office of the General Counsel
New York City Department of Health
 and Mental Hygiene

Of Counsel