UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK STATE RESTAURANT
ASSOCIATION,

                Plaintiff,

-against-

NEW YORK CITY BOARD OF HEALTH, et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. 1000 (RJH)

**MEMORANDUM OPINION AND ORDER**

       On April 16, 2008, this Court denied plaintiff New York State Restaurant Association's motion for a declaratory judgment and a preliminary injunction against the enforcement of New York City Health Code Section 81.50 ("Regulation 81.50"). *See N.Y. State Rest. Ass'n v. New York City Bd. of Health*, No. 08 Civ. 1000 (S.D.N.Y. Apr. 16, 2008) (opinion and order denying preliminary injunction). The Court granted the cross-motion of the defendants (collectively, "the City") for summary judgment on the issue of preemption. Familiarity with that opinion ("*NYSRA II*"), as well as the Court's prior opinion in *N.Y. State Rest. Ass'n v. New York City Bd. of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007) ("*NYSRA I*"), is assumed. Plaintiff now moves for a stay of enforcement of Regulation 81.50 pending appeal.

       Under Rule 62(c) of the Federal Rules of Civil Procedure, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for

bond or other terms that secure the opposing party's rights." "The four factors to be considered in issuing a stay pending appeal are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation marks omitted). A balancing of these factors is required. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Giepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

**A.    Likelihood of Success on the Merits**

Plaintiff claims that Regulation 81.50, which requires certain restaurant chains to post the caloric value of food items on their menu boards (1) is preempted by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. §§ 343, 343-1 (2006), and (2) would infringe its members' First Amendment rights.

1. Plaintiff has not demonstrated a substantial possibility of success on appeal of their preemption claim. It is true, as plaintiff claims, that certain of the regulatory provisions adopted by the FDA are "complex." (Pl.'s Mem. 6.) However, the fundamental structure of the NLEA is clear enough: (1) the mandatory nutrition labeling requirements of § 343(q) do not apply to restaurants, 21 U.S.C. § 343(q); (2) the power of States to require nutritional labeling by restaurants is not preempted by the statute, 21

2

U.S.C. § 343-1(a)(5); and (3) the Act's regulation of nutrient content "claims" made by restaurants (and other food purveyors) only applies to voluntary information that they choose to add to their menus, 21 U.S.C. §§ 343(r), 343-1(a)(4).[1]  On its face, Regulation 81.50 does not purport to regulate any such "claims" but imposes mandatory disclosures of the type preserved for the states under the statute.  Although no court of appeals has addressed the preemption issue, the structure of the NLEA was explored in both *NYSRA I* and *NYSRA II* and is entirely consistent with the analysis of two other district courts regarding state and local authority to regulate restaurants in this manner.  *See Reyes v. McDonald's Corp.*, No. 06 C 1604, 2006 WL 3253579, at *4 (N.D. Ill. Nov. 8, 2006) (§ 343-1(a) "permits states to require restaurants to apply nutrition labels to their food.");[2] *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003) ("§ 343-1(a)(4) does not expressly bar [state-mandated] nutrition labeling on restaurant foods either directly or . . . indirectly.").  This is not to say that plaintiff has no possibility of success on appeal, only that such possibility is modest.

    2.  Considerably more modest is the possibility of success on plaintiff's claim that Regulation 81.50 violates the First Amendment rights of its members.  As discussed in detail in *NYSRA II*, the Second Circuit has already addressed the First Amendment implications of commercial disclosure requirements such as Regulation 81.50, which

---

[1] The question of what precisely constitutes a "claim," specifically whether a simple voluntary statement of nutrient content (e.g. "100 calories") may be considered a claim under § 343(r), is in fact a difficult question.  However, this issue was resolved in plaintiff's favor and was not the basis for the Court's denial of plaintiff's preliminary injunction motion.

[2] Contrary to plaintiff's recent contention (Pl.'s Mem. 6), the court in *Reyes* did not "side" with plaintiff.  Indeed, the court found that only because "McDonald's *voluntarily* complied with the NLEA" was it subject to the Act's regulations regarding voluntary claims.  2006 WL 3253579, at *4 (emphasis added).  Interestingly, the restaurant defendant in *Reyes* interpreted the statute precisely as this Court has.  *See id.* ("McDonald's claims that although the NLEA does not *require* restaurants to comply with nutrition labeling requirements [under § 343(q)], in the event that a restaurant *chooses* to make nutrition claims, it subjects itself to the requirements of the NLEA [under § 343(r)] . . .") (emphasis added).

3

merely "compel 'purely factual and uncontroversial' commercial speech," and found that such regulations are governed by the "reasonable relationship" standard of *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 650, 651 (1985). *See Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113 (2d Cir. 2001). While it is true that Regulation 81.50 is a new initiative by state and local authorities to mandate nutrient disclosures by restaurants, the First Amendment implications are not novel and the regulation falls comfortably within existing precedent.

### B.   Irreparable Injury

Plaintiff does not argue that its members will be injured in any economic sense through loss of customers or the costs associated with compliance. Rather, plaintiff argues that the injury it may suffer is the *per se* irreparable harm resulting from violation of constitutional rights under the First Amendment and the Supremacy Clause. (Pl.'s Mem. 2.)

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Therefore, plaintiff's members will have suffered some irreparable injury if a stay of enforcement is not ordered and Regulation 81.50 is later found to violate the First Amendment. The Court notes, however, that "the interests at stake [in the case of a compelled commercial disclosure] are not of the same order" as those implicated by restrictions on speech or by compelled speech outside the commercial context. *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 650–51 (1985). While the *per se* irreparable harm associated with an unconstitutional commercial disclosure requirement

4

would not be unimportant, it would appear to be of a lower order than that associated with government action implicating core First Amendment values.

The irreparable harm flowing from a possible violation of the Supremacy Clause appears to be of a different nature than that which arises from an infringement of First Amendment rights. District courts in this Circuit have noted that while "a violation of constitutional rights can constitute *per se* irreparable harm, . . . . *per se* irreparable harm is caused only by violations of 'personal' constitutional rights . . . to be distinguished from provisions of the Constitution that serve 'structural' purposes," like the Supremacy Clause. *Equal Opportunity Employment Comm'n v. Local 638*, No. 71 Civ. 2877, 1995 WL 355589, at *5 (S.D.N.Y. June 7, 1995); *Am. Petroleum Inst. v. Jorling*, 710 F. Supp. 421, 432 (N.D.N.Y. 1989) ("In the court's view, the [defendant's] asserted violation of the Supremacy Clause cannot, without more, serve as the basis for a finding of irreparable harm."). *See also Grand Central Sanitation, Inc. v. City of Bethlehem*, Civ. A. No. 94-5928, 1994 WL 613674, at *2 (E.D. Pa. Nov. 2, 1994) ("While the Commerce Clause is an integral component of our Constitution, I do not believe that injury from its violation is necessarily equivalent to the unique, individual injury accompanying a violation of the First Amendment.").

Plaintiff cites *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992), and *Trans World Airlines v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990), in support of its claim that enforcement of a preempted state or local law results in *per se* irreparable harm. These cases addressed the question of irreparable harm in the context of a permanent injunction, after the appellate court had found that the state law at issue was clearly preempted by federal law. Thus, these cases stand only for the proposition that

5

when there is a very high likelihood of success on the merits of the preemption claim, little or no additional showing with respect to the other three factors is necessary. This approach is entirely consistent with the approach applied in the Second Circuit, in which "the degree to which a factor must be present varies with the strength of the other factors." *In re World Trade Ctr.*, 503 F.3d at 170. Despite the fact that plaintiff's claimed *per se* injury is based on the violation of a "structural," rather than a "personal" constitutional right, the Court concludes that it would suffer some degree of irreparable injury with respect to its preemption claim if enforcement is not stayed pending appeal.

C.      **Defendants' Interest and the Public Interest**

In a case such as this one, in which a party sues a government entity to enjoin the enforcement of a law or regulation, the third factor—the defendants' interest—and the fourth factor—the public interest—largely overlap. The City shares with the public a strong interest in the prompt enforcement of laws enacted for the purpose of advancing public health.[3] Without endorsing or criticizing the regulatory scheme embodied in Regulation 81.50, it is beyond cavil that the regulation is intended to combat obesity,

---

[3] Plaintiff asserts that the City will not be injured by a stay of enforcement pending appeal, based on the City's previous consent to stay enforcement of Regulation 81.50 pending resolution of plaintiff's preliminary injunction motions and its voluntary provision of "grace periods" and "no-fine" periods in connection with the regulation. In support of this argument, Plaintiff cites *Goldstein v. Miller*, 488 F. Supp. 156 (D. Md. 1980). (Pl.'s Mem. 3.) In *Goldstein*, the district court found that the federal government was not prohibited by the Twenty-first Amendment from establishing an exclusive list of bottle sizes for the bottling of distilled spirits that applied to bottling and sale occurring wholly within a state's borders. 488 F. Supp. at 157–58. The court noted that the government had agreed to stay the enforcement of its regulation for two months pending resolution of that litigation, and granted a stay of enforcement pending appeal, based in part on a finding that the government would not be irreparably injured by further postponement. *Id.* at 171–76. This case is distinguishable from *Goldstein*. In *Goldstein*, the government conceded during oral argument that it would not be "materially injured" by an injunction pending appeal. *Id.* at 175. Moreover, the regulation at issue in *Goldstein* was not, like Regulation 81.50, enacted to address a serious public health problem, but to facilitate the federal government's collection of tax revenue. *Id.* at 168–70. Defendants here have made no such concession. The Court does not believe that the City's reasonable cooperation with plaintiff in agreeing to delay enforcement of its regulation to permit adequate time for plaintiff's challenges and for plaintiff's members to achieve compliance should be considered evidence that the City will suffer no injury from continued stay of enforcement.

which both parties concede is a significant public health problem. The public interest, and, accordingly, the City's interest in enforcement of legislation enacted in the public interest, weigh heavily against granting a stay of enforcement.

Upon consideration of all the factors, the Court concludes that a stay pending appeal is not warranted. Plaintiff has not shown a likelihood or substantial possibility of success on either its preemption or First Amendment claims. To be sure, an improvident denial of a stay will result in some level of irreparable injury in the event that the Court of Appeals concludes that one or both of plaintiff's claims are well founded. On the other hand, the City has a strong public interest in enforcing a regulatory scheme to address serious health issues that all parties recognize. In this connection, the Court notes that where the moving party seeks a preliminary injunction that will affect government action in the public interest pursuant to a statutory or regulatory scheme, the moving party "must establish a clear or substantial likelihood of success on the merits." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007). The standard for the grant of a stay pending appeal is different. *Mohammed v. Reno*, 309 F.3d 95, 100-01. However, the obvious policy reasons underlying the heightened preliminary injunction standard should inform the Court's consideration of the relevant factors in the context of a motion for a stay pending appeal. Finally, the Court also notes that its determination is necessarily affected by the indeterminate length of any stay pending appeal. A stay of brief duration might alter the Court's calculus, while a stay of many months would appear to work a serious injustice to the City and the public interest.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a stay of enforcement of Regulation 81.50 pending appeal is denied. However, in order to permit time for plaintiff to request relief from the Second Circuit, the Court orders the following interim stay:

1. All enforcement of Regulation 81.50 shall be stayed through and including April 25, 2008.

2. Defendants may not seek any monetary fines for violation of Regulation 81.50 though and including June 6, 2008.

SO ORDERED.

Dated: New York, New York
       April 18, 2008

_____
Richard J. Holwell
United States District Judge